Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/10/2023 09:06 AM CST

**State of Nebraska, appellee, v. Celvin Ottoniel
Castillo-Rodriguez, appellant.**

___ N.W.2d ___

Filed March 10, 2023.    No. S-22-464.

1. **Sentences: Appeal and Error.** Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.
2. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.
3. **Sentences: Records.** Neb. Rev. Stat. § 47-503 (Reissue 2021) requires a sentencing court to separately determine, state, and grant credit for time served, and the court has no discretion to grant more or less credit than is established by the record.
4. **Sentences.** Neb. Rev. Stat. § 47-503 (Reissue 2021) is intended to ensure that defendants receive all the credit against their jail sentence to which they are entitled—no less, and no more.
5. **Sentences: Records.** When a trial court grants a defendant more or less credit for time served than the defendant actually served, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit as verified objectively by the record.
6. **Habeas Corpus: Words and Phrases.** A writ of habeas corpus ad prosequendum is a common-law writ issued by a court, ordering the immediate removal of a prisoner from incarceration so that he or she can be brought to another jurisdiction to stand trial on charges for crimes committed within that jurisdiction.
7. **Habeas Corpus.** In Nebraska, writs of habeas corpus ad prosequendum have been and continue to be a traditional way of securing the presence of a prisoner located in another jurisdiction.
8. **Sentences: Records: Proof.** Because jail credit is an absolute and objective number established by the record, the party advocating for

a specific jail credit calculation has the burden to provide the sentencing court with a record that establishes such calculation.

Appeal from the District Court for Hall County: PATRICK M. LEE, Judge. Affirmed.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

STACY, J.

This criminal appeal challenges the sentencing court's jail credit calculation under Neb. Rev. Stat. § 47-503 (Reissue 2021). We find no error in the jail credit calculation on this record and affirm.

## BACKGROUND

### FACTS

On October 25, 2021, Celvin Ottoniel Castillo-Rodriguez was charged in Hall County with four felony counts of third degree sexual assault of a child. He waived his right to a preliminary hearing in county court, and the case was bound over to district court, where an information charging the same four counts was filed. Eventually, Castillo-Rodriguez entered a no contest plea to an amended information charging two counts of child abuse, each a Class I misdemeanor. He was sentenced to 365 days in the county jail on each count, to be served consecutively. He was given 94 days of credit against the first jail term.

The sole issue on appeal is whether the district court properly calculated jail credit under § 47-503. Pursuant to that statute, "Credit against a jail term shall be given to any person sentenced to a city or county jail for time spent in jail as a

result of the criminal charge for which the jail term is imposed or as a result of conduct upon which such charge is based."[1] As relevant here, such credit "shall include, but not be limited to, time spent in jail: (a) Prior to trial; (b) During trial; [and] (c) Pending sentence."[2]

To understand the court's jail credit calculation and the parties' arguments, we provide additional background about the time Castillo-Rodriguez spent in the Hall County jail prior to trial and pending sentencing.

### Detention in Hall County Jail

On October 22, 2021, Castillo-Rodriguez was arrested and lodged in the Hall County jail on the subject felony charges, which we will refer to as the "Hall County case." A few days later, on October 25, he executed an appearance bond and was released from custody.

On October 26, 2021, Castillo-Rodriguez was taken into custody by U.S. Immigration and Customs Enforcement (ICE), and he was detained by ICE in the Hall County jail. The parties generally agree that ICE had an agreement to house its detainees in the Hall County jail, but no such agreement is in our record. Nor does our record contain documentation of how, why, or precisely when ICE took custody of Castillo-Rodriguez. No party contends, however, that Castillo-Rodriguez' ICE detention was related to the charges in the Hall County case. The parties agree that after Castillo-Rodriguez was taken into ICE custody on October 26, he was continuously detained in the Hall County jail until his sentencing on May 24, 2022.

After Castillo-Rodriguez was placed in ICE custody, the county court judge issued a writ of habeas corpus ad prosequendum addressed to ICE, and the writ was filed in the Hall County case. The writ was dated October 26, 2021, and it provided:

---

[1] § 47-503.

[2] *Id.*

IT IS HEREBY ORDERED that you release CELVIN OTTONIEL CASTILLO-RODRIGUEZ . . . , now in the custody of [ICE], and being held at the Hall County Department of Corrections in Grand Island, Nebraska, to the custody of the Director of the Hall County Department of Corrections, or such officer as the Director deems appropriate, on or before the 9th day of December, 2021, at the hour of 9:30 AM and each day thereafter as may be necessary, for the purpose of attending proceedings in the above-referenced case.

The Defendant will be detained and held without release of any kind pending these proceedings. The Defendant will be held in the custody of the Hall County Department of Corrections until all matters in the County Court and District Court of Hall County relating to the above-named case number are resolved. Upon conclusion of the case, including serving any sentencing, said Defendant is to be returned to the custody from which he came as soon as practicable under safe and secure conduct in accordance with law.

As discussed in more detail later, a writ of habeas corpus ad prosequendum is a common-law writ issued by a court to order the immediate removal of a prisoner from incarceration so that he or she can be brought to another jurisdiction to stand trial on charges for crimes committed within that jurisdiction.[3] The writ is a traditional way to secure the presence of a prisoner held in another jurisdiction.[4]

On December 30, 2021, Castillo-Rodriguez filed a motion to revoke his bond in the Hall County case "[f]or the reason that the Defendant [has] an Immigration hold, [and] the Defendant desire[s] to accumulate time serve[d]." It does not appear from our record that the county court ruled on this motion before the case was bound over to district court.

---

[3] See *State v. Williams*, 253 Neb. 619, 573 N.W.2d 106 (1997).

[4] *Id*.

However, at his plea hearing in district court on February 24, 2022, Castillo-Rodriguez' counsel informed the court he wanted "to make sure that . . . bond is revoked, Your Honor. . . . I want to make sure he's getting credit for this time because he's in ICE custody." The district court formally revoked the appearance bond in the Hall County case that same day and set the matter for sentencing on April 6, 2022.

On March 17, 2022, the district court judge issued a second writ of habeas corpus ad prosequendum addressed to ICE. Like the first writ issued by the county court, the second writ referenced the case number for Castillo-Rodriguez' Hall County case, and it was filed in that case. The second writ contained identical language to the first, except the second writ ordered Castillo-Rodriguez to be released to Hall County jail officials "on or before the 6th day of April, 2022, at the hour of 1:30 P.M. and each day thereafter as may be necessary, for the purpose of attending proceedings in the above-referenced case."

## Sentencing

For reasons which are not clear from our record, the sentencing hearing was continued from April 6 to May 24, 2022. During the sentencing hearing on May 24, defense counsel took issue with the jail credit calculation contained in the presentence investigation report and requested additional credit for time served. The presentence investigation report identified two time periods during which Castillo-Rodriguez was in jail on the Hall County case. The first was from his arrest on October 22, 2021, until he bonded out on October 25, and the second was from the date his bond was revoked on February 24, 2022, until the date of sentencing. The presentence investigation report indicated that between these two time periods Castillo-Rodriguez was in "ICE custody."

When the court asked the State for its position on the request for additional jail credit, the prosecutor replied:

> I didn't do the math. I believe the start date is correct as [defense counsel] indicated. I think he was in

custody until maybe [October] 25th as documented in the presentence. Then I think he posted the bond, and then he was transferred into ICE custody from that point forward. I don't know if there was a revocation of bond filed by the defense in this case, but it's just my understanding that he's been in custody that entire time.

After confirming that the court file showed bond had been revoked on February 24, 2022, the court announced its jail credit determination on the record. The court found Castillo-Rodriguez was entitled to a total of 94 days of jail credit, calculated as follows:

• 4 days of credit based on being in Hall County jail from October 22, 2021 (the date he was arrested), to October 25 (the date he bonded out), and

• 90 days of credit based on being in Hall County jail from February 24, 2022 (the date his bond was revoked), to May 24 (the date he was sentenced).

Defense counsel responded that this calculation was "technically right," but he asked the court to consider awarding jail credit for the period before the bond was revoked. He also asked the court to consider a sentence of probation, and he provided the court with additional information on the status of federal immigration proceedings against Castillo-Rodriguez, explaining:

He is eligible for a term of probation. He does have — he has been subjected to a removal order, but that is on appeal and that appeal is to be heard later today actually, so that was the impetus for us to ask the Court to get us in a little bit early so we can have resolution one way or the other to get to his immigration attorney so that Court can be advised of all of the circumstances. There's a possibility, given the specific convictions, that [Castillo-Rodriguez'] removal order could be removed and he could remain in the country.

The court found Castillo-Rodriguez was not an appropriate candidate for probation and imposed consecutive 1-year

jail sentences with 94 days of jail credit on the first jail term.[5] Castillo-Rodriguez was then remanded to the custody of the "Hall County Department of Corrections" to serve his sentence.

After sentencing, Castillo-Rodriguez moved for an order nunc pro tunc requesting additional jail credit. No evidence was adduced at the hearing on this motion, but defense counsel relied on the language of § 47-503, as well as the language of the writs of habeas corpus ad prosequendum, to argue that Castillo-Rodriguez was in jail "as a result of the criminal charge"[6] in the Hall County case from the date of his arrest through the date of his sentencing. Specifically, defense counsel argued:

> [The writ issued October 26, 2021,] says that the Defendant will be detained and held without release of any kind pending these proceedings. He will be held in the custody of the Hall County Department of Corrections until all matters in the County Court and District Court of Hall County relating to the above-named case number are resolved.
>
> I think it's pretty clear under the language of the writ that Judge Wetzel ordered . . . that regardless of whether [Castillo-Rodriguez] posted bond or not, the bottom line was that he was not going to be released from jail until all matters related to this case were resolved, and so that would be, quote, end quote, time spent in jail as a result of the criminal charge for which the jail term is imposed, and so I think by all rights, [Castillo-Rodriguez] should have received credit from October 26th of 2021 when Judge Wetzel issued that [writ] through the date of sentencing on May 2[4]th.

---

[5] See *State v. Galvan*, 305 Neb. 513, 941 N.W.2d 183 (2020) (holding jail credit applies only once where defendant has multiple charges or cases pending simultaneously), *modified on denial of rehearing* 306 Neb. 498, 945 N.W.2d 888.

[6] § 47-503.

The court asked the prosecutor whether he agreed with defense counsel's reading of the writ, and the prosecutor replied, "I guess I am not disputing the language of the writ. I guess I would say that controls the Court." The prosecutor also elaborated on why the writ was issued. He explained that after Castillo-Rodriguez posted bond on October 25, 2021, he was released from State custody. So, when he was subsequently taken into ICE custody, the State used the writ of habeas corpus ad prosequendum to "tak[e] physical control over [him] so that immigration doesn't deport [him] from the United States so that we can have him to finish the prosecution."

In an order entered June 22, 2022, the district court overruled the motion nunc pro tunc, reasoning that Castillo-Rodriguez was not seeking to correct a clerical error relating to jail credit, but instead was seeking to modify the sentencing order as it regarded the jail credit determination.[7] The court concluded it was "without jurisdiction to modify its final order in the manner requested by" Castillo-Rodriguez.

Castillo-Rodriguez filed a notice of appeal within 30 days of the sentencing order. We moved the appeal to our docket on our own motion.

## ASSIGNMENT OF ERROR

The sole assignment of error is that the district court erred in "failing to award Castillo-Rodriguez 215 days['] credit for time served."

## STANDARD OF REVIEW

[1,2] Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court.[8] Similarly,

---

[7] See *In re Interest of Luz P. et al.*, 295 Neb. 814, 891 N.W.2d 651 (2017) (purpose of nunc pro tunc is to correct clerical or formal errors in order to make record correctly reflect judgment rendered by court).

[8] *State v. Wines*, 308 Neb. 468, 954 N.W.2d 893 (2021).

statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court.[9]

## ANALYSIS

On appeal, Castillo-Rodriguez argues he was entitled to 215 days of jail credit under § 47-503, while the State contends the trial court correctly determined he was entitled to 94 days of jail credit.

In Nebraska, the calculation and application of credit for time served is controlled by statute.[10] Different statutes govern depending on whether the defendant is sentenced to jail or prison.[11] Section 47-503 governs jail credit when the defendant is sentenced to a term in county jail and provides in relevant part:

> (1) Credit against a jail term shall be given to any person sentenced to a city or county jail for time spent in jail as a result of the criminal charge for which the jail term is imposed or as a result of conduct upon which such charge is based. Such credit shall include, but not be limited to, time spent in jail:
> (a) Prior to trial;
> (b) During trial;
> (c) Pending sentence;
> . . . .
> (2) Credit to any person sentenced to a city or county jail who is eligible for credit pursuant to subsection (1) of this section shall be set forth as part of the sentence at the time such sentence is imposed.

[3-5] Section 47-503 requires a sentencing court to separately determine, state, and grant credit for time served, and the court has no discretion to grant more or less credit

---

[9] *Id.*

[10] *State v. Harms*, 304 Neb. 441, 934 N.W.2d 850 (2019).

[11] *Id.*

than is established by the record.[12] Section 47-503 is intended to ensure that defendants receive all the credit against their jail sentence to which they are entitled—no less, and no more.[13] When a trial court grants a defendant more or less credit for time served than the defendant actually served, that portion of the pronouncement of sentence is erroneous and may be corrected to reflect the accurate amount of credit as verified objectively by the record.[14]

Here, the district court relied on information contained in the presentence investigation report, as well as information in the court record, to determine that Castillo-Rodriguez was in jail as a result of the criminal charges in the Hall County case for a total of 94 days. After independently reviewing the record, we agree it establishes entitlement to 94 days of jail credit.

The record shows that Castillo-Rodriguez was in the Hall County jail from his arrest on October 22, 2021, until he bonded out on October 25—a period of 4 days. The record further establishes that Castillo-Rodriguez was in the Hall County jail under ICE custody beginning on October 26, and he remained there until he was sentenced. Finally, the record establishes that on February 24, 2022, the district court revoked Castillo-Rodriguez' bond in the Hall County case. And the State does not dispute that once his bond was revoked, Castillo-Rodriguez was in the Hall County jail as a result of the Hall County case. The record therefore establishes both periods of jail credit expressly found by the district court, for a total jail credit of 94 days.

But Castillo-Rodriguez relies on the writs of habeas corpus ad prosequendum to argue he was also in jail as a result of the Hall County case from the date the first writ was issued through the date of his sentencing. In other words,

---

[12] See *State v. Clark*, 278 Neb. 557, 772 N.W.2d 559 (2009).

[13] *Galvan, supra* note 5.

[14] *Id*.

Castillo-Rodriguez argues the district court was wrong to conclude that from October 26, 2021, to February 24, 2022, he was in the Hall County jail as a result of ICE proceedings, not as a result of the Hall County case. And Castillo-Rodriguez argues that if this additional time period had been considered, he would have been entitled to jail credit of 215 days, not 94.

To address his argument, we first review the general nature of writs of habeas corpus ad prosequendum. We then examine the record to consider what, if anything, it established about the writs issued in this case.

### Writs of Habeas Corpus ad Prosequendum

[6,7] In *State v. Williams*,[15] we summarized the nature of a writ of habeas corpus ad prosequendum, explaining:

> A writ of habeas corpus ad prosequendum is a common-law writ issued by a court, ordering the immediate removal of a prisoner from incarceration so that he can be brought to another jurisdiction to stand trial on charges for crimes committed within that jurisdiction. See *Carbo v. United States*, 364 U.S. 611, 81 S. Ct. 338, 5 L. Ed. 2d 329 (1961); 39 Am. Jur. 2d *Habeas Corpus* § 2 (1968) (citing *State v. Heisler*, 95 Ariz. 353, 390 P.2d 846 (1964)). In Nebraska, writs of habeas corpus ad prosequendum have been and continue to be a traditional way of securing the presence of a prisoner located in another jurisdiction. See *Hawk v. State*, 151 Neb. 717, 39 N.W.2d 561 (1949), *cert. denied* 339 U.S. 923, 70 S. Ct. 612, 94 L. Ed. 1346 (1950). Federal prisons, such as the prison in Leavenworth, Kansas, are authorized to "consider a request made on behalf of a state or local court that an inmate be transferred to the physical custody of state or local agents pursuant to state writ of habeas corpus *ad prosequendum* . . . ." 28 C.F.R. § 527.30 (1997).

---

[15] *Williams, supra* note 3, 253 Neb. at 626-27, 573 N.W.2d at 111-12.

*Williams* also explained that a writ of habeas corpus ad prosequendum is not synonymous with a detainer agreement.

The U.S. Supreme Court has also addressed writs of habeas corpus ad prosequendum. A century ago, in *Ponzi v. Fessenden*,[16] the Court recognized that a prisoner in federal custody may be transported to a state court to face pending charges. The Court explained:

> We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. . . . The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.[17]

*Ponzi* recognized the "chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy."[18] The Court in *Ponzi* described this as a "'principle of comity'" and observed that "'when one [sovereign] takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty.'"[19] But the Court in *Ponzi* also recognized that nothing prevents a jurisdiction from practicing "the comity which the harmonious and effective operation of

---

[16] *Ponzi v. Fessenden*, 258 U.S. 254, 42 S. Ct. 309, 66 L. Ed. 607 (1922).

[17] *Id*., 258 U.S. at 259.

[18] *Id*., 258 U.S. at 260.

[19] *Id*., 258 U.S. at 260, 261, quoting *Covell v. Heyman*, 111 U.S. 176, 4 S. Ct. 355, 28 L. Ed. 390 (1884).

both systems of courts requires,"[20] and thus, one sovereign having "custody and jurisdiction"[21] of a prisoner may "consent"[22] to the transfer of the prisoner to another sovereign to be tried, only insisting "on his being kept safely from escape or from danger."[23]

Here, the parties disagree about the legal impact the writs of habeas corpus ad prosequendum had on Castillo-Rodriguez' entitlement to jail credit under § 47-503. Castillo-Rodriguez directs us to the broad language used in these writs, and he argues it resulted in transferring his custody from ICE to Hall County jail officials for the entire duration of the Hall County case. The State disagrees and cites to an Indiana case[24] to argue the "writs of habeas corpus ad prosequendum did not change that [Castillo-Rodriguez] was in ICE custody rather than the custody of the State."[25]

This court has not yet addressed the legal effect, if any, a writ of habeas corpus ad prosequendum has on a defendant's entitlement to jail credit under § 47-503. But this case does not afford us a meaningful opportunity to explore that question because, as we explain next, nothing in this record established that ICE complied with either writ.

### NO EVIDENCE OF COMPLIANCE
### WITH WRITS

As we recognized in *Williams*, federal regulations govern the procedure to be followed by federal authorities in responding to writs of habeas corpus ad prosequendum.[26] Under

---

[20] *Ponzi, supra* note 16, 258 U.S. at 263.

[21] *Id.*, 258 U.S. at 265.

[22] *Id.*, 258 U.S. at 266.

[23] *Id.*

[24] See *Alvarez v. State*, 147 N.E.3d 374 (Ind. App. 2020).

[25] Brief for appellee at 8.

[26] See *Williams, supra* note 3. See, also, 28 C.F.R. §§ 527.30 and 527.31 (2021).

those regulations, the "[w]arden of the institution in which the inmate is confined" is authorized to approve a transfer of custody only when certain requirements are met.[27] Here, Castillo-Rodriguez was confined in the Hall County jail, and under Nebraska law, the sheriff is in charge of the county jail and all persons confined therein.[28]

But nothing in the record established that ICE officials or the Hall County sheriff ever received, approved, accepted, or complied with the writs issued here. During oral argument before this court, counsel for Castillo-Rodriguez acknowledged there is nothing in the record establishing such facts, but he argued it was the State's burden to make such a record.

Our cases hold that a sentencing court has no discretion to grant more or less jail credit than is established by the record,[29] but we have not previously addressed who has the burden to make that record. In cases like this one, where a presentence investigation report was ordered and prepared, that report typically identifies the number of days the defendant spent in jail as a result of the charges for which he or she is being sentenced, as it is a matter relevant to sentencing.[30] If the State or the defendant wants to object to or supplement the information in the presentence investigation report, either party has an opportunity to do so during the sentencing hearing.[31]

Here, during the sentencing hearing, defense counsel took issue with the jail credit information in the presentence investigation report and argued Castillo-Rodriguez was entitled

---

[27] 28 C.F.R. § 527.31(c).

[28] See Neb. Rev. Stat. § 47-105 (Reissue 2021).

[29] *Clark, supra* note 12.

[30] See Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2022) (presentence investigation report shall include circumstances of crime and offender's history of delinquency or criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other relevant matters).

[31] See *id.* (court may allow fair opportunity for offender to provide additional information for court's consideration).

to additional credit. The State took the position that the jail credit information in the report was correct. Neither party adduced evidence to support their position.

[8] We are aware that presentence investigation reports are not prepared in every criminal case and that sometimes such reports either fail to address jail credit or express uncertainty as to the correct amount of jail credit. But since jail credit is "an absolute and objective number that is established by the record,"[32] and since no statute mandates who is responsible for making that record, we think it is reasonable to require that the party advocating for a specific jail credit calculation has the burden to provide the sentencing court with a record that establishes such calculation.[33]

Here, no evidence bearing on jail credit was adduced beyond the information contained in the presentence investigation report and otherwise appearing in the court record. The court record showed that writs of habeas corpus ad prosequendum were issued and filed, but it did not establish that ICE officials or the Hall County sheriff ever authorized or agreed to a transfer of custody pursuant to the writs. Indeed, statements made by defense counsel during sentencing indicate that Castillo-Rodriguez' federal immigration case continued to proceed during the pendency of the Hall County case.

In some cases, it may be reasonable to infer that a transfer of custody from one sovereign to another was approved or authorized in response to a writ of habeas corpus ad prosequendum because the defendant was physically transported to a different jurisdiction or detention facility. But no such inference is appropriate here, because Castillo-Rodriguez was detained in the Hall County jail both before and after the writs were issued. The jail logs would likely have shown whether, and if so when, custody of Castillo-Rodriguez was

---

[32] See *Clark, supra* note 12, 278 Neb. at 562, 772 N.W.2d at 563.

[33] Cf. *People v. Fransua*, 457 P.3d 64 (Colo. App. 2016) (defendant claiming entitlement to credit for time served bears burden of proof on issue).

transferred from ICE to Hall County jail officials pursuant to the writs, but no such evidence was adduced.

The mere issuance of a writ of habeas corpus ad prosequendum does not establish compliance with the writ by the sovereign having custody. And since our record contains nothing to objectively establish compliance with the writs issued here, an opinion addressing the legal impact of those writs would be merely advisory. It is generally not the function of appellate courts to render advisory opinions,[34] so the impact, if any, that a writ of habeas corpus ad prosequendum has on entitlement to jail credit under § 47-503 is a matter we leave for another day and a different record.

On this record, we find no error in the district court's determination that Castillo-Rodriguez was entitled to 94 days of jail credit.

## CONCLUSION

The amount of jail credit to which a defendant is entitled under § 47-503 presents a question of law to be determined from the record presented to the district court.[35] On this record, the district court did not err in determining that Castillo-Rodriguez was entitled to 94 days of jail credit. We affirm the judgment and sentences of the district court.

Affirmed.

---

[34] See, *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006); *State v. Rust*, 223 Neb. 150, 388 N.W.2d 483 (1986)

[35] See *Clark, supra* note 12.