IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

BRIDGEWATER HOMES V. WOODSONIA ACQUISITIONS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BRIDGEWATER HOMES, LLC, APPELLANT,

V.

WOODSONIA ACQUISITIONS, LLC, APPELLEE.

Filed May 19, 2026.    No. A-25-291.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed.

Connor W. Orr, of The Orr Law Group, P.L.L.C., for appellant.

Gregory C. Scaglione, of Koley Jessen, P.C., L.L.O., for appellee.

MOORE, PIRTLE, and WELCH, Judges.

WELCH, Judge.

### INTRODUCTION

Bridgewater Homes, LLC (Bridgewater), appealed from the Douglas County District Court's order dismissing its breach of contract claim in favor of Woodsonia Acquisitions, LLC (Woodsonia). Bridgewater contends that the district court erred in determining that it had subject matter jurisdiction to reach a conclusion in the matter as to issues not yet ripe at the time of trial. For the reasons set forth herein, we affirm.

### STATEMENT OF FACTS

The instant case involves an alleged breach of contract action filed by Bridgewater against Woodsonia related to an agreement for the purchase of real estate.

Bridgewater's complaint, filed on June 23, 2023, and amended on June 27 and September 12, alleged that it entered into a Purchase and Sale Agreement (Agreement) with Woodsonia for

- 1 -

the purchase of real estate lots at 168th and 16435 Bennington Road in Douglas County, Nebraska (Waters Edge). Bridgewater alleged that, although the parties' written contract did not set forth the time for delivery of the real estate, at the time that Bridgewater paid the deposits for the lots, Woodsonia orally represented that delivery of both real estate lots would be available "no later than Q2 of 2023." According to Bridgewater, Woodsonia later indicated that the Waters Edge lots would not be available until Q1 of 2024. Bridgewater alleged that, due to Woodsonia's failure to close on the sale of the lots within the specified period, it notified Woodsonia that it elected to terminate the Agreement and requested the return of the deposits paid. Specifically, Bridgewater alleged that Woodsonia breached the contract by failing to deliver the lots by Q2 of 2023 per the parties' oral agreement, or, alternatively, a claim for recission of the contract on the basis that the contract was void as a matter of law due to the contract failing to specify a time for delivery. Bridgewater further asserted that Woodsonia failed to return deposits paid and requested that the court order Woodsonia to return $445,000 in deposits, plus prejudgment and postjudgment interest.

In its answer and counterclaim, Woodsonia generally denied the allegations in Bridgewater's complaint, asserting that Bridgewater wrongfully attempted to terminate the Agreement. Woodsonia admitted that it did not return the deposits paid but alleged that the parties' agreement provided that the deposits were nonrefundable. Woodsonia further admitted that the Waters Edge Agreement did not specify a specific time for delivery and that it contained a provision that time was of the essence; despite this, Woodsonia alleged that the Agreement provided conditions precedent and notice requirements that set the date for the time of delivery of the lots. Woodsonia counterclaimed for declaratory judgment, requesting a finding that Bridgewater breached, or anticipatorily breached, the contract and requested that the court quiet title for the real estate lots.

During the bench trial, the Agreement was admitted into evidence. The Agreement provided that the buyer was to provide an initial deposit of $50,000 and an additional deposit of $315,000. The Agreement provided the following regarding closing:

> 1.3 **Closing**. The execution and delivery of the documents and instruments for the consummation of the purchase and sale of the Lots in each Phase pursuant hereto (each, a "**Closing**" and collectively, the "**Closings**") will take place at the office of the Title/Escrow Agent or by the use of overnight courier services and wire transfer through an escrow established with the Title/Escrow Agent as follows: (a) the Closing of the Phase 1 Lots will take place on the date that is thirty (30) days following the date on which the Phase 1 Lots are certified as "buildable" by Seller's engineering firm (the "**Phase 1 Closing Date**"), (b) the Closing of the Phase 2 Lots will take place within three hundred sixty-five (365) days after the Phase 1 Closing Date (the "**Phase 2 Closing Date**"), and (c) the Closing of the Phase 3 Lots will take place within three hundred sixty-five (365) days after the Phase 2 Closing Date (the "**Phase 3 Closing Date**").

> An October 2021 first amendment to the Agreement set forth, in pertinent part:
> 1. **Property**. Section 1.1(a) of the Purchase Agreement is hereby amended and restated as follows: . . . Either party shall have the right to terminate this Agreement in the event (i) there is a substantial change between the preliminary plat that was mutually agreed upon

by the parties and the government-approved preliminary plat, which substantial change is required by the applicable government authority(ies) in order to approve the preliminary plat, or (ii) there is a substantial change between the government-approved preliminary plat and the Final Plat, which substantial change is required by the applicable government authority(ies) in order to approve the Final Plat. Such termination right may be exercised by either party by providing written notice thereof to the other party within ten(10) business days after Buyer's receipt from Seller of the government-approved preliminary plat or the Final Plat, as the case may be. Additionally, in the event there is a substantial change between the government-approved preliminary plat and the Final Plat which is not required by the applicable government authority(ies) and is reasonably likely to impact the marketability of the Lots, Buyer shall have the right to terminate this Agreement by providing written notice thereof to Seller within ten (10) business days after Buyer's receipt of the Final Plat from Seller.

A November 2021 Second Amendment to the Agreement provided, in pertinent part, that two additional parcels were purchased as an addition to the Waters Edge development, which increased Bridgewater's additional deposit from $315,000 to $395,000.

Following a bench trial, on August 7, 2024, the district court entered an order dismissing Bridgewater's complaint with prejudice on the basis that Bridgewater failed to meet its burden "as to all issues in this matter." Regarding Woodsonia's counterclaim for declaratory judgment on the basis that Bridgewater breached, or anticipatorily breached, the contract, the court denied the counterclaim, finding that "Bridgewater has not breached the contract. It still has the ability to continue with the Contract if it so desires." The court set the matter for further hearing to address Woodsonia's claim for attorney fees and costs.

Following a hearing on Woodsonia's request for attorney fees and costs, on February 11, 2025, the court entered an order awarding Woodsonia costs but denying its claim for attorney fees, finding that no statutory authority or case law permitted the award of attorney fees in an alleged breach of contract action.

On February 19, 2025, Woodsonia filed a timely motion to alter or amend the judgment, or, alternatively, for an award of additional costs for necessary record preparation related to Bridgewater's filing of a subsequent action for claims that had already been litigated. On March 31, 2025, the district court denied Woodsonia's motion to alter or amend and its request for additional costs. On April 17, Bridgewater filed its notice of appeal from the district court's August 7, 2024, order.

## ASSIGNMENT OF ERROR

Bridgewater's sole assignment of error is that the district court erred in determining it had subject matter jurisdiction as to issues that had not yet arisen or were otherwise not ripe for trial.

## STANDARD OF REVIEW

Subject matter jurisdiction is a question of law. *Woodsonia Hwy 281 v. American Multi-Cinema*, 318 Neb. 592, 17 N.W.3d 780 (2025).

ANALYSIS

Bridgewater brought this lawsuit claiming Woodsonia breached its contract with Bridgewater by failing to timely deliver certain lots to Bridgewater under the terms of the parties' contract. Bridgewater sought a return of their deposit or an order declaring that the contract was void because it lacked a proper timing mechanism for delivery. Woodsonia counterclaimed that Bridgewater's conduct should be construed as a breach, or anticipatory breach, of the contract, entitling Woodsonia to retain Bridgewater's deposit. Following a trial, the district court found that neither party breached the contract, the contract was not void, and that the contract remained in effect as it related to future performance obligations.

On appeal, Bridgewater makes a very specific assignment of error here regarding subject matter jurisdiction. Bridgewater does not claim that the district court lacked subject matter jurisdiction over its claim or Woodsonia's counterclaim as framed by the pleadings or as tried to the district court. Instead, Bridgewater takes issue with the scope of the district court's order in disposing of the parties' claims. More specifically, Bridgewater claims that, subsequent to the district court's order in this matter,

> Bridgewater . . . filed a new Complaint, with different causes of action, additional defendants, and new facts that have arisen since trial. Counsel for [Woodsonia] filed a motion to alter or amend the [judgment] seeking to add additional language to bolster and simplify [Woodsonia's] claim and/or issue preclusion in the newly filed case.

Brief for appellant at 10-11.

Bridgewater appeals the district court's order dismissing all issues in the matter with prejudice allegedly to avoid improper application of the doctrine of issue preclusion and to allow Bridgewater to assert its rights bargained for under the Agreements. Bridgewater then asks this court to take judicial notice of its newly filed claim to provide better context on how Bridgewater contends that Woodsonia is attempting to overapply the district court's ruling in this case to the newly filed case. Bridgewater is also apparently requesting clarification of the district court's order so that it is not "overapplied" in its newer lawsuit. Brief for appellant at 11.

The focus of Bridgewater's assignment of error here designates that portion of the district court's order stating: "Therefore, this Court finds that Bridgewater failed to meet its burden as to all issues in this matter and its Complaint is dismissed with prejudice." Bridgewater argues that this sentence is too broadly worded and that Woodsonia is attempting to utilize that broad language in Bridgewater's new lawsuit to establish that some issues have been previously litigated and are barred from relitigation under the doctrine of res judicata. In short, Bridgewater is asking this court to declare that the sentence in the district court's order that Bridgewater "failed to meet its burden as to all issues in this matter" is overly broad and the district court lacked subject matter jurisdiction to so order. On the other hand, Woodsonia argues:

> Pursuing this appeal to preemptively defeat Woodsonia's assertion of claim and issue preclusion in Bridgewater's subsequent action based on the same Agreement before the Douglas County District Court . . . , which subsequent action Bridgewater commenced after losing this case, is not an appropriate basis for an appeal. . . . Bridgewater should

address the assertions of claim and issue preclusion in Bridgewater's subsequent action, and only that District Court has jurisdiction to decide such claim and issue preclusion defenses in the first instance. Bridgewater cannot properly ask this Court to make an advisory, preemptive ruling on those defenses to Bridgewater's subsequent action. Those defenses have nothing to do with this action or this appeal; those defenses are only raised in Bridgewater's subsequent action.

Brief for appellee at 12. We agree.

Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *Boyd v. Cook*, 298 Neb. 819, 906 N.W.2d 31 (2018). District courts have jurisdiction over any civil proceeding that could have been brought in the English equity or common-law courts, and a breach of contract is a common-law action. See *Kotrous v. Zerbe*, 287 Neb. 1033, 846 N.W.2d 122 (2014). There is no question that the district court had subject matter jurisdiction over Bridgewater's claim and Woodsonia's counterclaim as framed and tried and simply found both parties failed to meet their burden of proof over the issues framed by the pleadings and later tried to the court in furtherance of the requests for relief.

To the extent Bridgewater is seeking an advisory opinion as to what issues were litigated in this claim and therefore barred in the next, we are not at liberty to do so. It is generally not the function of appellate courts to render advisory opinions. *State v. Castillo-Rodriguez*, 313 Neb. 763, 986 N.W.2d 78 (2023). We find the district court had subject matter jurisdiction over Bridgewater's breach of contract claim and Woodsonia's breach of contract counterclaim. As such, the district court did not lack subject matter jurisdiction in finding neither party satisfied their burden as to the issues tried to the court. The full extent of what issues were litigated here and would be procedurally barred in a new lawsuit are questions for another court and another day.

## CONCLUSION

Having considered and rejected Bridgewater's assigned error, we affirm the order of the district court.

AFFIRMED.