Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

MIMG LXXIV Colonial, LLC, appellant,
v. TajReAna Ellis, appellee.

___ N.W.3d ___

Filed May 31, 2024.    No. S-23-438.

1. **Moot Question: Jurisdiction: Appeal and Error.** Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.
2. **Judgments: Jurisdiction: Appeal and Error.** When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts.
3. **Moot Question: Words and Phrases.** A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive.
4. **Moot Question.** The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.
5. **Moot Question: Costs.** Generally, claims for costs are not sufficient to avoid mootness.
6. **Moot Question: Appeal and Error.** The public interest exception to the mootness doctrine requires an appellate court to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.

Appeal from the District Court for Douglas County, Timothy P. Burns, Judge, on appeal thereto from the County Court for Douglas County, Jeffrey L. Marcuzzo, Judge. Appeal dismissed.

Joshua C. Dickinson, Shilee T. Mullin, Tara E. Holterhaus, and Gene M. Eckel, of Spencer Fane, L.L.P., for appellant.

Caitlin Cedfeldt, of Legal Aid of Nebraska, for appellee.

Kasey D. Ogle, for amicus curiae Nebraska Appleseed Center for Law in the Public Interest.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Per Curiam.

In this residential eviction case, the parties disagree over whether the landlord provided adequate notice before commencing eviction proceedings. Although the parties agree that Nebraska's Uniform Residential Landlord and Tenant Act (URLTA) required the landlord to provide only 7 days' notice, the tenant takes the position that a provision within the federal Coronavirus Aid, Relief, and Economic Security Act (CARES Act), see 15 U.S.C. § 9058(c) (Supp. IV 2022), imposed a permanent, nationwide 30-day notice requirement that preempts any shorter notice requirement under state law. The county court rejected the tenant's argument, but, on appeal, the district court accepted it and vacated the eviction. The landlord now appeals to us. At this point, however, the tenant's lease has expired, and she no longer resides in the property at issue. We accordingly find that the case is moot and dismiss the appeal.

## BACKGROUND

TajReAna Ellis leased an apartment from MIMG LXXIV Colonial, LLC (Colonial). The 1-year lease term began in August 2022.

After Ellis failed to pay all she owed Colonial as it became due, Colonial, on November 8, 2022, delivered to Ellis a "Seven Day Notice to Pay Rent." The notice advised that Ellis was in default for failing to pay charges owed under her

lease and informed her that if she did not pay the amounts owed or surrender the property within 7 days, Colonial would institute eviction proceedings. Seven days elapsed, and Ellis failed to pay the amounts Colonial claimed she owed. On November 17, Colonial initiated eviction proceedings under the URLTA.

Ellis moved to dismiss the eviction action in the county court. In support of the motion, she argued that the CARES Act required Colonial to provide Ellis 30 days' notice before commencing eviction proceedings. The county court denied Ellis' motion and eventually entered a judgment of restitution of the premises in favor of Colonial.

Ellis appealed to the district court. She renewed her arguments that, under the CARES Act, the URLTA's notice requirement is preempted and Colonial was obligated to provide 30 days' written notice. The district court agreed with Ellis. In its order, the district court observed that "every court that has looked at this issue has held that the 30-day notice requirement is still controlling and has not expired" and cited a Colorado Supreme Court case, which cited decisions from other jurisdictions. See *Arvada Village Gardens LP v. Garate*, 529 P.3d 105 (Colo. 2023). Because Colonial did not give Ellis 30 days' notice, the district court reversed the judgment of the county court and remanded the cause with directions to enter judgment for Ellis.

Colonial filed a timely appeal and a petition to bypass the Nebraska Court of Appeals. We granted the petition to bypass.

At oral argument, counsel for Ellis acknowledged that after Ellis' lease expired, Ellis moved out of the apartment at issue. Given this acknowledgment, we directed the parties to submit supplemental briefs addressing whether the case is moot and, if so, whether we should address the merits under any exception to the general rule that moot cases are subject to dismissal. See *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023).

## ASSIGNMENTS OF ERROR

Colonial assigns three errors, each of which challenges the district court's conclusion that the CARES Act required it to provide 30 days' notice. Colonial argues that the district court erred because (1) the CARES Act's notice requirement did not apply, (2) the CARES Act did not preempt the 7-day notice requirement imposed by the URLTA, and (3) to the extent the CARES Act's notice requirement did apply, it was unconstitutional, as Congress lacked the power to enact it.

## STANDARD OF REVIEW

[1,2] Because mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions. *NP Dodge Mgmt. Co., supra*. When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by lower courts. *Id.*

## ANALYSIS

*Mootness.*

Colonial challenges the district court's order reversing its judgment for restitution of the premises. At this point in time, however, Ellis' lease has expired, and the parties agree that she no longer lives in the apartment at issue. Given these facts, we must consider whether Colonial's appeal is moot.

[3,4] A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive. *Id.* The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief. *Id.* Or, put another way, "'[a] moot case exists where a judgment rendered by the court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court.'" *Id.* at 752, 993 N.W.2d at 109-10, quoting

*Sloan v. Friends of Hunley, Inc.*, 369 S.C. 20, 630 S.E.2d 474 (2006).

That is the case here. The legal relief Colonial sought and obtained in the county court and seeks to have restored on appeal was a judgment for restitution of the premises. Such a judgment would allow it to remove Ellis from the apartment she leased. See *NP Dodge Mgmt. Co., supra*. But now that Ellis' lease has expired and she has moved out of the apartment, such a judgment would have no practical effect. See *id.*

[5] Despite the foregoing, Colonial offers arguments in its supplemental brief that the case is not moot. Colonial argues first that it has an interest in knowing whether or not it violated the law. Alternatively, it argues that it has a live financial interest in the case, because as part of its order, the district court taxed costs against Colonial, and, through this appeal, Colonial seeks to avoid those costs. Colonial's arguments require little discussion. Any party could contend that it has an interest in knowing whether a lower court's decision was correct; a case is nonetheless moot if that determination will have no practical effect. As for Colonial's contention that the case is not moot based on the district court's taxing of costs, there is legal authority to the contrary. "Claims for costs traditionally have not been thought sufficient to avoid mootness, presumably on the theory that such incidental matters should not compel continuation of an otherwise moribund action." 13C Charles Alan Wright et al., Federal Practice and Procedure § 3533.3 at 50 (2023). We agree with the foregoing and thus hold that, generally, claims for costs are not sufficient to avoid mootness.

Because we find that we cannot grant effective relief at this time, we conclude that the appeal is moot.

*Public Interest Exception.*

Even though the case is moot, that does not necessarily end our analysis. Although a moot case is ordinarily subject to summary dismissal, we have recognized circumstances in which we may reach the merits of an otherwise moot case. The

parties offer multiple reasons why we should reach the merits of this case, even if it is moot.

[6] First, both parties ask that we reach the merits under the public interest exception to the mootness doctrine. The public interest exception to the mootness doctrine requires an appellate court to consider (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem. *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023). In addition, even if an issue is likely to recur, we have said that it is generally inappropriate for an appellate court to review a moot case that does not evade review as a result of a transitory setting. See *id.*

Last year, in *NP Dodge Mgmt. Co., supra*, we dismissed an appeal in an eviction case as moot. As in this case, by the time the appeal reached us, the tenant's lease had expired and she no longer lived in the apartment at issue. And while the parties in that case asked us to decide whether the tenant was constitutionally entitled to a jury trial in the eviction proceedings under the public interest exception, we declined to do so. Among other things, we found it unclear whether the issue inherently evaded review. We find the same is true here.

In addition to uncertainty about whether the issue inherently evades review, there is another consideration unique to this case. As the factors relevant to application of the public interest exception demonstrate, the exception exists so that authoritative judicial guidance can be provided on issues that are likely to recur but would otherwise inherently evade review. This court can provide final authoritative guidance over such questions when analyzing a question of Nebraska law. But the primary question in this case—did the CARES Act require Colonial to provide 30 days' notice?—is a matter of *federal* statutory interpretation. State courts obviously can and do interpret federal statutes, see, e.g., *J.S. v. Nebraska Dept. of Health & Human Servs.*, 306 Neb. 20, 944 N.W.2d

266 (2020), but on issues of federal statutory interpretation, the U.S. Supreme Court gets the last word. See, e.g., *James v. Boise*, 577 U.S. 306, 307, 136 S. Ct. 685, 193 L. Ed. 2d 694 (2016) (explaining that state courts are "bound by [the U.S. Supreme Court's] interpretation of federal law"). We are reluctant to decide an issue in a moot case when our guidance would not be finally authoritative. Accordingly, we decline to reach the merits of Colonial's appeal under the public interest exception.

As well as asking us to decide the merits under the public interest exception, Colonial also argues that we should reach the merits under a separate exception: the collateral consequences exception. Generally, that exception "permits adjudication of the merits of a criminal case where the petitioner may suffer future state or federal penalties or disabilities as a result of the [criminal] judgment," even though the criminal sentence has already been served. *State v. Patterson*, 237 Neb. 198, 202, 465 N.W.2d 743, 747 (1991), citing *St. Pierre v. United States*, 319 U.S. 41, 63 S. Ct. 910, 87 L. Ed. 1199 (1943). Colonial argues that the district court's decision will negatively impact its reputation as a property manager. In *NP Dodge Mgmt. Co., supra*, we declined to reach the merits under the collateral consequences exception, observing that we have previously refused to apply the exception outside the criminal context. Likewise, here, because Colonial has not identified that it will be subject to the type of collateral consequences that warrant review, we decline to reach the merits under that exception.

## CONCLUSION

Because this case is moot, we dismiss the appeal.

Appeal dismissed.

Papik, J., concurring.

I agree that the case is moot and subject to dismissal. I also agree that this court cannot provide final authoritative guidance on the issue of federal statutory interpretation on which

this case turns. That said, unless the U.S. Supreme Court grants certiorari or Congress amends the relevant statutory provision, litigation over the issue may persist. If it does, state courts will be forced to continue grappling with whether the 2020 federal Coronavirus Aid, Relief, and Economic Security Act (CARES Act) imposes a permanent federal 30-day notice requirement on evictions from covered properties and preempts shorter notice requirements imposed by state law. I write separately to suggest the possible relevance to that analysis of a canon of statutory construction.

In a number of cases, the U.S. Supreme Court has relied on a clear-statement rule sometimes called "the federalism canon." See *West Virginia v. EPA*, 597 U.S. 697, 744, 142 S. Ct. 2587, ___ L. Ed. 2d ___ (2022) (Gorsuch, J., concurring). See *Hohenberg v. Shelby County, Tennessee*, 68 F.4th 336 (6th Cir. 2023). Under this canon of interpretation, courts are not to interpret a federal statute to regulate an area traditionally regulated by the states absent a clear statement in the statute of congressional intent to do so. See *Gregory v. Ashcroft*, 501 U.S. 452, 111 S. Ct. 2395, 115 L. Ed. 2d 410 (1991). See, also, *Bond v. United States*, 572 U.S. 844, 134 S. Ct. 2077, 189 L. Ed. 2d 1 (2014); *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994). Or, as the Court somewhat recently articulated the principle, Congress must "'enact exceedingly clear language if it wishes to significantly alter the balance between federal and state power.'" *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, 594 U.S. 758, 764, 141 S. Ct. 2485, 210 L. Ed. 2d 856 (2021).

In this case, Ellis takes the position taken by several other tenants across the country facing eviction: that a provision enacted as part of the CARES Act, see 15 U.S.C. § 9058(c) (Supp. IV 2022), imposes a permanent federal requirement that lessors of certain covered properties provide 30 days' notice to a tenant before initiating eviction proceedings. A permanent federal notice requirement for evictions would seem

to qualify as a significant alteration of the balance between federal and state power. Just a few years ago, in a case concerning a different eviction moratorium issued by the Centers for Disease Control and Prevention (CDC), the U.S. Supreme Court reiterated that the landlord-tenant relationship "is the particular domain of state law." *Alabama Assn. of Realtors v. Department of Health and Human Servs.*, 594 U.S. at 764. On that basis, the Court indicated that, in the absence of clear language saying so, the statute at issue should not be interpreted to give the CDC the authority to issue an eviction moratorium. *Alabama Assn. of Realtors, supra*. Given the U.S. Supreme Court's recognition that landlord-tenant law is traditionally an issue of state concern, it seems safe to conclude that the adoption of a permanent federal 30-day notice requirement for residential evictions also significantly alters the balance of state and federal power.

To the extent it might be suggested that a permanent federal 30-day notice requirement for evictions would not significantly alter the balance of state and federal power because the statute at issue applies to only certain covered dwellings with some connection to federal housing programs, it is worth noting just how many properties are covered. The statute at issue, 15 U.S.C. § 9058, applies not just to properties that participate in many federal housing assistance programs, see 15 U.S.C. § 9058(a)(2)(A), but also to any property that has a federally backed mortgage loan, see 15 U.S.C. § 9058(a)(2)(B), assuredly not an insignificant number of rental properties around the country. More to the point, even if the lessors or lessees of the properties to which 15 U.S.C. § 9058 applies receive some form of federal financial assistance, there appears to be no dispute that the notice requirements for evictions for such properties, like the rest of landlord-tenant law generally, have traditionally been determined by state law.

If the federalism canon were applied, the relevant question would not be whether the text of 15 U.S.C. § 9058 is best read to create a permanent federal 30-day notice requirement

for evictions from covered properties. Rather, the question would be whether an interpretation that avoids or minimizes federal regulation of a subject traditionally left to the states is at least tenable, such that the more expansive interpretation cannot be described as clear. As Justice Barrett observed in a recent concurring opinion, the federalism canon is a "strong-form canon," and such canons ask courts to "*strain* statutory text to advance a particular value." *Biden v. Nebraska*, 600 U.S. 477, 508, 143 S. Ct. 2355, 216 L. Ed. 2d 1063 (2023) (Barrett, J., concurring) (emphasis in original). As a result, Justice Barrett explained that when a clear-statement interpretive rule applies, "the better interpretation of a statute will not necessarily prevail," *id*., and if the "better reading leads to a disfavored result . . . the court will adopt an inferior-but-tenable reading to avoid it," *id*., 600 U.S. at 509. See, also, *Rudisill v. McDonough*, 601 U.S. 294, 315, 144 S. Ct. 945, ___ L. Ed. 2d ___ (2024) (Kavanaugh, J., concurring) ("[a]pplying a substantive canon, a court may depart from what the court, absent the canon, would have concluded is the best reading of the statutory text. Otherwise, of course, the substantive canon would not be necessary or relevant").

Some have questioned whether the use of substantive canons in this fashion is consistent with the U.S. Supreme Court's ascendant textualist approach to statutory interpretation. See, e.g., *Biden, supra* (Barrett, J., concurring). See, also, Benjamin Eidelson & Matthew C. Stephenson, *The Incompatibility of Substantive Canons and Textualism*, 137 Harv. L. Rev. 515 (2023); Amy Coney Barett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109 (2010); Antonin Scalia, A Matter of Interpretation 28 (1997) (suggesting that substantive canons "are a lot of trouble" for "the honest textualist"). Even so, the U.S. Supreme Court has given no indications that it is retreating from the federalism canon, and thus, it appears that other judges, when called to interpret federal statutes, are bound to apply it.

Up to this point, Ellis' reading of the statute has prevailed in a number of courts. The Colorado Supreme Court, for example, held that a lessor must provide 30 days' notice before commencing any proceeding to evict a tenant from a property covered by 15 U.S.C. § 9058. See *Arvada Village Gardens LP v. Garate*, 529 P.3d 105 (Colo. 2023). At least two state intermediate appellate courts have followed the Colorado Supreme Court's reasoning. See, *Hazelwood v. Common Wealth Apartments*, 231 N.E.3d 284 (Ind. App. 2024); *Olentangy Commons Owner LLC v. Fawley*, 2023 Ohio App. 4039, 228 N.E.3d 621 (2023). The district court in this case also cited the Colorado Supreme Court's opinion in concluding that Colonial was obligated to provide 30 days' notice.

None of the above-mentioned courts, however, appear to have taken account of the federalism canon in reaching their conclusions. For the reasons I have discussed, it is my view that future courts resolving this issue should. A court applying the federalism canon might well conclude that the reading adopted by the Colorado Supreme Court is the only tenable reading of 15 U.S.C. § 9058 and thus must be adopted. On the other hand, if a court could identify a tenable reading of the statutory text that did not significantly alter the traditional balance between state and federal power in the same way, the federalism canon would seem to require that interpretation be adopted.