Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/28/2025 09:11 AM CST

In re Guardianship of Tomas J., a minor child.
Marvin T. Jose Mateo, appellant.

___ N.W.3d ___

Filed February 28, 2025.    No. S-24-251.

1. **Guardians and Conservators: Appeal and Error.** An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made in the county court.

2. **Judgments: Appeal and Error.** When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.

3. **Child Custody: Jurisdiction: Appeal and Error.** In considering whether jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.

4. **Moot Question: Jurisdiction: Appeal and Error.** Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.

5. **Jurisdiction: Appeal and Error.** Before an appellate court reaches the legal issues presented for review, it has a duty to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.

6. ____: ____. When a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

7. **Child Custody: Jurisdiction.** Jurisdiction over a child custody proceeding is governed exclusively by the Uniform Child Custody Jurisdiction and Enforcement Act.

8. **Child Custody: Guardians and Conservators: Words and Phrases.** Under the Uniform Child Custody Jurisdiction and Enforcement Act, the term "child custody proceeding" is defined to include a proceeding for guardianship of a minor.

9. **Courts: Jurisdiction: Child Custody: Federal Acts.** Nebraska courts with jurisdiction over an "initial child custody determination" as that term is used in Neb. Rev. Stat. § 43-1238(a) (Cum. Supp. 2024) also have jurisdiction and authority to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J) (2018).

10. **Courts: Jurisdiction: Child Custody: Guardians and Conservators: Evidence.** A county court with a jurisdictional basis under Neb. Rev. Stat. § 43-1238(a) (Cum. Supp. 2024) and which has made an initial child custody determination, such as appointing a guardian, has the authority to make immigration-related factual findings where the evidence is sufficient and the court has been requested to do so.

11. **Jurisdiction: Child Custody: Guardians and Conservators.** Where the prospective minor ward in a guardianship proceeding has reached the age of 18 and thus is no longer a "child" under the Uniform Child Custody Jurisdiction and Enforcement Act, a county court's jurisdiction is not governed by that act.

12. **Courts: Jurisdiction: Legislature.** As courts of limited jurisdiction, county courts have only that jurisdiction which has been granted through specific legislative enactment.

13. **Moot Question: Jurisdiction: Appeal and Error.** Mootness does not prevent appellate jurisdiction; rather, mootness is a justiciability doctrine that can prevent courts from exercising jurisdiction.

14. **Moot Question: Words and Phrases.** A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive.

15. **Moot Question.** A case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation.

16. ____. The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.

17. **Moot Question: Judgments.** If a judgment rendered by the trial court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court, the case is moot.

18. **Moot Question.** As a general rule, a moot case is subject to summary dismissal.

19. **Moot Question: Public Officers and Employees.** The public interest exception to the mootness doctrine requires the consideration of (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.

20. **Moot Question.** The public interest exception to the mootness doctrine exists so that authoritative judicial guidance can be provided on issues that are likely to recur but would otherwise inherently evade review.

21. **Moot Question: Appeal and Error.** It is generally inappropriate for an appellate court to review a moot case to address an issue that would not otherwise evade review.

22. **Moot Question: Criminal Law: Judgments: Sentences.** The collateral consequences exception to the mootness doctrine permits adjudication of the merits of a criminal case where the petitioner may suffer future state or federal penalties or disabilities as a result of the criminal judgment, even though the criminal sentence has already been served.

Appeal from the County Court for Hall County, Arthur S. Wetzel, Judge. Appeal dismissed.

David V. Chipman, of Monzón, Guerra & Chipman, for appellant.

No other appearance.

Roxana Cortes-Mills and Anne Wurth for amicus curiae Center for Immigrant and Refugee Advancement.

Dylan Severino and Rose Godinez for amicus curiae ACLU of Nebraska.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, and Freudenberg, JJ.

Stacy, J.

Marvin T. Jose Mateo (Marvin) filed a petition in the Hall County Court seeking to establish a minor guardianship for his then 18-year-old brother, Tomas J. Marvin's petition also requested immigration-related factual findings pursuant to a statute within the Uniform Child Custody Jurisdiction and

Enforcement Act (UCCJEA).[1] After holding an evidentiary hearing on Marvin's guardianship petition, the county court denied the petition and dismissed the proceeding without making the requested factual findings. Marvin appeals, assigning error to several aspects of the county court's ruling.

Our disposition of Marvin's appeal is driven by Tomas' age at different points in the proceeding. Because Tomas was 18 years old when the minor guardianship petition was filed, we address as a threshold issue the impact of his age on the county court's jurisdiction to make a child custody determination under the UCCJEA. As a matter of first impression, we conclude that in a minor guardianship proceeding where the prospective ward has reached the age of 18 and is no longer a "child" as defined by the UCCJEA,[2] a county court's jurisdiction is not governed by the UCCJEA and, instead, is governed by other Nebraska statutes. And although we ultimately conclude the county court had jurisdiction over the minor guardianship proceeding, we do not reach the merits of the issues raised on appeal because we conclude the appeal became moot once Tomas reached the age of majority. We therefore dismiss the appeal.

## I. BACKGROUND

### 1. Minor Guardianship Petition

On January 5, 2024, Marvin filed a petition in the Hall County Court seeking to establish a minor guardianship for his younger brother, Tomas. The petition alleged that Tomas was born in Guatemala in October 2005, was brought to the United States as a minor in 2018, and had been in Marvin's care since 2019. The petition further alleged that Marvin and Tomas had been living in Grand Island, Nebraska, since January 2022, that no other court had jurisdiction over Tomas,

---

[1] Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2016 & Cum. Supp. 2024).

[2] See § 43-1227(4).

and that Marvin was a suitable and proper person to be appointed Tomas' permanent guardian. Finally, the petition asked the court to make specific factual findings pursuant to § 43-1238(b), including findings that Tomas had been abandoned and neglected by his parents, that reunification with his parents was not viable due to such abandonment and neglect, and that it would not be in Tomas' best interests to be returned to Guatemala.

## 2. Minor Guardianship Hearing

Both Marvin and Tomas appeared for the guardianship hearing on February 1, 2024, and both testified. No one appeared to oppose the petition.

Marvin was represented by counsel, who introduced two exhibits. The first was a document prepared by the U.S. Department of Health and Human Services Office of Refugee Resettlement titled "Sponsor Care Agreement." That exhibit summarized the procedure for becoming the sponsor of "an unaccompanied alien child in the care and custody of the Federal Government,"[3] and it outlined the sponsor's responsibilities upon "enter[ing] into a custodial arrangement with the Federal Government" to provide for the child's care. The second exhibit was a report summarizing the political, economic, and humanitarian conditions in Guatemala.

### (a) Marvin's Testimony

Marvin testified that he is a U.S. citizen and that Tomas is his younger brother. Consistent with the facts alleged in the minor guardianship petition, Marvin testified that Tomas was born in Guatemala in 2005 and was brought to the United States by their father in 2018. Tomas' father was deported to Guatemala shortly thereafter, and Tomas was placed in a

---

[3] See 6 U.S.C. § 279(g)(2) (2018) (defining term "unaccompanied alien child" to mean "child who . . . has no lawful immigration status in the United States [and] has not attained 18 years of age" and who has no "parent or legal guardian in the United States . . . to provide care and physical custody").

facility for unaccompanied alien children. Eventually, federal immigration authorities released Tomas to Marvin and another sibling.

Marvin testified that in 2020, he entered into a sponsor care agreement with the federal government and was "appointed as the sponsor for Tomas['] immigration." Tomas has been in Marvin's exclusive care since that time, and Marvin has provided him with housing and necessary medical care, enrolled him in school, and helped him be "approved . . . for Medicaid." Marvin and Tomas had lived in Grand Island since January 2022. At the time of the hearing, Tomas was attending high school in Grand Island and was expected to graduate in May 2024.

Marvin testified that he and Tomas are of Mayan ancestry, and he described discrimination and violence against Mayans in Guatemala, including against members of his extended family. Marvin testified both he and Tomas felt much safer in the United States than in Guatemala. He testified that Tomas' parents were still living in Guatemala and had "some financial issues." Marvin testified Tomas had not seen his parents since 2018, and they did not provide financial support for Tomas in the United States.

When Marvin was finished testifying, the court asked him whether he had "a delegation of parental authority or a power of attorney over Tomas." Marvin replied that his parents had given him power of attorney, but the only time he used it was with "Immigration when I took charge of [Tomas]."

(b) Tomas' Testimony

Tomas testified that when he lived with his parents in Guatemala, they lived in poor conditions and his parents could not financially afford to support him and his siblings. Tomas told the court that Marvin had taken good care of him since he came to the United States and that he wanted Marvin to be appointed as his permanent guardian. Tomas explained that he felt much safer in the United States, he was doing well in

high school, and he had plans to join the U.S. Marines after graduation.

### (c) Marvin's Argument

After the evidence was complete, Marvin's counsel acknowledged the delay in petitioning to establish a minor guardianship, but he argued that although Tomas had turned 18 years old several months earlier, Tomas was "still eligible" for a minor guardianship, which was "still the least restrictive" option for his care.[4] Counsel also acknowledged evidence that Tomas had been "able to navigate many things without [a] guardianship," but he argued there could still be circumstances where Tomas "would need [the] assistance of a guardian or a parent." Finally, counsel argued that the evidence supported the immigration-related factual findings requested pursuant to § 43-1238(b).

### 3. Court's Ruling

Ruling from the bench, the court denied the petition for minor guardianship without addressing the request for factual findings under § 43-1238(b). The court generally questioned the need for a minor guardianship, considering that Tomas was 18 years old; Marvin had been given a power of attorney by Tomas' parents; and for 6 years, Tomas had not experienced problems getting medical care or enrolling in school. The court made no finding of parental abandonment or unfitness and expressly found that the power of attorney executed by Tomas' parents allowed Marvin to "exercise authority over Tomas, without a guardianship." The court's ruling was memorialized in a journal entry dated February 1, 2024.

---

[4] See, e.g., 8 U.S.C. § 1232(c)(2)(A) and (B) (2018) (requiring that "unaccompanied alien child" be placed in "least restrictive setting that is in the best interest of the child" and that once such child "reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security," the secretary "shall consider placement in the least restrictive setting available").

### 4. Motion to Alter or Amend

On February 2, 2024, Marvin filed a motion to alter or amend the judgment or, alternatively, to reopen the evidence. In his supporting brief, Marvin argued that the court applied the wrong legal standard and failed to adequately consider whether the appointment of a minor guardian would serve Tomas' best interests.[5] Alternatively, Marvin asked the court to reopen the evidentiary record so he could show that the power of attorney executed by Tomas' parents was no longer valid.

At the March 28, 2024, hearing on the motion, the court received a copy of what Marvin identified as the power of attorney document his parents had given him in December 2019. The document was signed by both parents and was notarized in Guatemala. It was written in Spanish, so the court asked the certified court interpreter to provide a translation of the document in English for the record.

According to that translation, the parents "request[ed] that the present power of attorney be taken . . . as our mani-festation" to voluntarily give "our authority to [Marvin] of American nationality . . . so that he may be able, [on] our behalf, [to] be responsible for our minor son, [Tomas,] and to represent us before all the necessary authorities in the country of [t]he United States of America." The document also stated that "due to our economic conditions, it is impossible for us to transport to the place where he is located at present."

Marvin's counsel did not object to the document's transla-tion, nor did he argue that its provisions were legally insuf-ficient to delegate parental authority under the law of either Guatemala or Nebraska. Instead, he argued that under Neb. Rev. Stat. § 30-2604 (Reissue 2016), any parental delegation had expired.

---

[5] See Neb. Rev. Stat. § 30-2611 (Reissue 2016) ("[u]pon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of section 30-2608 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment").

Section 30-2604 states that a parent may use a power of attorney to delegate their authority regarding the care and custody of a minor child "for a period not exceeding six months." Marvin's counsel argued that because Tomas' parents executed the power of attorney in 2019, any parental delegation of authority had expired under § 30-2604. Alternatively, counsel argued that regardless of the current validity of the parental delegation, it was still in Tomas' best interests to have Marvin appointed as his guardian for the remainder of his minority.

Speaking from the bench, the court overruled the motion and later memorialized its ruling in a journal entry filed the same day. The court did not make an express finding regarding the validity of the power of attorney executed by Tomas' parents but noted there was "zero" evidence that Tomas' parents were unwilling to execute another power of attorney to provide for Tomas' care until he reached the age of majority. The court reiterated that for the past 6 years, Marvin had been able to care for Tomas and address all his needs without a guardianship in place, and the court said it appeared the guardianship petition was filed for the "sole purpose, not to protect the minor child, [but] to have me make [i]mmigration findings." The court said it regularly made such factual findings in minor guardianship cases but was "not going to create a guardianship for the limited purpose of making specific findings of fact."

Marvin filed a timely notice of appeal, and we moved the appeal to our docket on our own motion.

## II. ASSIGNMENTS OF ERROR

Marvin assigns, consolidated and restated, that the county court erred by (1) denying the guardianship petition without considering whether the appointment of a minor guardian would serve Tomas' best interests and (2) failing to make the requested factual findings under § 43-1238(b).

## III. STANDARD OF REVIEW

[1,2] An appellate court reviews guardianship and conservatorship proceedings for error appearing on the record made

in the county court.[6] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[7]

[3] In considering whether jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.[8]

[4] Mootness is a justiciability doctrine that operates to prevent courts from exercising jurisdiction, and an appellate court reviews mootness determinations under the same standard of review as other jurisdictional questions.[9]

## IV. ANALYSIS

Because Tomas' age at different points in this minor guardianship proceeding is critical to our disposition, we begin our analysis there.

It is undisputed that Tomas was born in October 2005. When Marvin filed his petition to establish a minor guardianship in January 2024, Tomas was already 18 years old. He turned 19 years old in October 2024, prior to oral argument in this appeal.

Now that Tomas is 19 years old, he has reached the age of majority under Nebraska law[10] and is considered an adult,

---

[6] *In re Guardianship & Conservatorship of Barnhart*, 290 Neb. 314, 859 N.W.2d 856 (2015).

[7] *In re Guardianship & Conservatorship of J.F.*, 307 Neb. 452, 949 N.W.2d 496 (2020).

[8] *In re Guardianship of S.T.*, 300 Neb. 72, 912 N.W.2d 262 (2018).

[9] See *MIMG LXXIV Colonial v. Ellis*, 316 Neb. 746, 6 N.W.3d 799 (2024).

[10] See, Neb. Rev. Stat. § 43-2101(1) (Cum. Supp. 2024) ("[a]ll persons under nineteen years of age are declared to be minors, but in case any person marries under the age of nineteen years, his or her minority ends"); Neb. Rev. Stat. § 30-2209(26) (Reissue 2016) (for purposes of Nebraska Probate Code, "minor" is defined as "an individual under nineteen years of age, but in case any person marries under the age of nineteen years his or her minority ends").

with all the rights granted and responsibilities imposed by statute or common law.[11] But on the date Marvin filed the minor guardianship petition, Tomas was still 18 years old, and that age has legal significance under Nebraska law too.

Once a person reaches the age of 18, that person's status changes under Nebraska law. Nebraska law authorizes an 18-year-old who is not a ward of the state to do many things adults can do, including entering into binding contracts, leases, and mortgages; acquiring and conveying title to real property; and obtaining mental health services without the consent of a parent or guardian.[12] Moreover, once a person reaches the age of 18, that person is no longer considered a "juvenile" under the Nebraska Criminal Code[13] or the Nebraska Juvenile Code.[14] And, importantly, reaching the age of 18 means that an individual is no longer considered a "child" under several substantive areas of Nebraska law. For example, a "child" under Nebraska's paternity statutes is defined as one who is "under the age of eighteen years."[15] And, as most relevant here, under the UCCJEA, a "child" is defined as "an individual who has not attained eighteen years of age."[16]

To summarize, under Nebraska's statutory framework, Tomas was still considered a "minor" under the Nebraska

---

[11] See § 43-2101(2).

[12] See *id*.

[13] See Neb. Rev. Stat. § 28-1201 (Supp. 2023) (defining "juvenile" as "any person under the age of eighteen years").

[14] See Neb. Rev. Stat. § 43-245(11) (Cum. Supp. 2024) ("[j]uvenile means any person under the age of eighteen").

[15] Neb. Rev. Stat. § 43-1401(1) (Reissue 2016). But cf., Neb. Rev. Stat. § 43-2922(4) (Cum. Supp. 2024) (defining "child" under Nebraska's Parenting Act as "a minor under nineteen years of age"); Neb. Rev. Stat. § 43-4602(3)(A) (Reissue 2016) (defining "child" under Uniform Deployed Parents Custody and Visitation Act as "an unemancipated individual who has not attained nineteen years of age").

[16] § 43-1227(2).

Probate Code[17] on the date the minor guardianship petition was filed, but he was no longer considered a "child" under the UCCJEA.[18] Because our prior minor guardianship cases have not expressly addressed jurisdiction under such circumstances, we requested supplemental briefing.

More specifically, we asked Marvin to address whether the statutory definition of "child" under the UCCJEA impacted the county court's jurisdiction to establish a minor guardianship for Tomas and/or to make immigration-related factual findings under § 43-1238(b) of the UCCJEA. We also asked Marvin to address whether any Nebraska statute *other* than § 43-1238(b) expressly authorizes a county court, as a court of limited jurisdiction,[19] to make such factual findings.

[5,6] Marvin filed a supplemental brief addressing these issues, and we have carefully considered his arguments. We acknowledge these jurisdictional issues were not raised by the parties or presented to the county court. But before an appellate court reaches the legal issues presented for review, it has a duty to determine whether it has jurisdiction over the matter before it, irrespective of whether the issue is raised by the parties.[20] And when a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[21]

Because our jurisdiction to review Marvin's assigned errors depends on whether the county court had jurisdiction over this minor guardianship proceeding, we begin by reviewing that court's jurisdiction under the UCCJEA.

---

[17] See § 30-2209(26).

[18] See § 43-1227(2).

[19] See *State v. A.D.*, 305 Neb. 154, 939 N.W.2d 484 (2020).

[20] See *Perkins Cty. Bd. of Equal. v. Mid America Agri Prods.*, 317 Neb. 1, 8 N.W.3d 716 (2024).

[21] *In re Estate of Weeder, ante* p. 393, 16 N.W.3d 137 (2025).

## 1. Jurisdiction Under UCCJEA

[7,8] The Nebraska Legislature enacted the UCCJEA in 2003[22] and made it "the exclusive jurisdictional basis for making a child custody determination by a court of this state."[23] The UCCJEA defines a "child custody determination" as any "judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child,"[24] and it expressly defines a "child custody proceeding" to include a proceeding for "guardianship."[25] Based on this statutory framework, our cases broadly recognize that "[j]urisdiction over a child custody proceeding is governed exclusively by the UCCJEA"[26] and that "[u]nder the UCCJEA, the term '[c]hild custody proceeding' is defined to include a proceeding for guardianship of a minor."[27]

In 2018, the Legislature amended the jurisdictional provisions of the UCCJEA to provide:

> In addition to having jurisdiction to make judicial determinations about the custody and care of the child, a court of this state with exclusive jurisdiction under subsection (a) of this section has jurisdiction and authority to make factual findings regarding (1) the abuse, abandonment, or neglect of the child, (2) the nonviability of reunification with at least one of the child's parents due to such abuse, abandonment, neglect, or a similar basis under state law, and (3) whether it would be in the best interests of such child to be removed from the United

---

[22] See 2003 Neb. Laws, L.B. 148.

[23] § 43-1238(b).

[24] § 43-1227(3).

[25] § 43-1227(4).

[26] *In re Guardianship of S.T., supra* note 8, 300 Neb. at 76, 912 N.W.2d at 266.

[27] *Id.* See, also, *In re Guardianship of Carlos D.*, 300 Neb. 646, 653, 915 N.W.2d 581, 586 (2018) ("[u]nder Nebraska statutes and jurisprudence, a guardianship of a child is a child custody determination").

States to a foreign country, including the child's country of origin or last habitual residence. If there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion.[28]

[9,10] We have recognized that although the factual findings authorized by § 43-1238(b) of the UCCJEA do not precisely track the language of the federal immigration statutes and regulations governing special immigrant juvenile (SIJ) status,[29] the enactment of § 43-1238(b) served to clarify that in Nebraska, "courts with jurisdiction over an 'initial child custody determination' as that term is used in § 43-1238(a) also have jurisdiction and authority to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J)."[30] And after the 2018 amendments to § 43-1238(b), we have consistently held that a "county court with a jurisdictional basis under § 43-1238(a) and which has made an initial child custody determination, such as appointing a guardian, has the authority to make immigration-related factual findings where the evidence is sufficient and the court has been requested to do so."[31] Such factual findings can then be used by the child to support a separate application for SIJ status under federal immigration law.[32]

Here, there is no dispute that Marvin's minor guardianship petition asked the county court to make an initial custody determination involving Tomas by appointing Marvin as his permanent guardian and that it further asked the court to make certain SIJ findings pursuant to § 43-1238(b) of the

---

[28] § 43-1238(b) (Cum. Supp. 2024).

[29] See, 8 U.S.C. § 1101(a)(27)(J) (2018); 8 C.F.R. § 204.11 (2024).

[30] See *Hernandez v. Dorantes*, 314 Neb. 905, 920, 994 N.W.2d 46, 59 (2023) (quoting *In re Guardianship of Carlos D., supra* note 27).

[31] *In re Guardianship of Luis J.*, 300 Neb. 659, 664, 915 N.W.2d 589, 593 (2018); Accord *In re Guardianship of Carlos D., supra* note 27.

[32] See, 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11.

UCCJEA. And there is no dispute that on the date the guardianship petition was filed, Tomas was no longer a "child" as defined by the UCCJEA.

Marvin's supplemental briefing generally concedes that because Tomas was 18 years old when the petition for minor guardianship was filed, Tomas was no longer a "child" under the UCCJEA and, therefore, the county court's jurisdiction was not governed by the UCCJEA. We agree.

[11] Where, as here, the prospective minor ward in a guardianship proceeding has reached the age of 18 and thus is no longer a "child" under the UCCJEA, a county court's jurisdiction is not governed by the UCCJEA. And for the sake of completeness, we observe that because Tomas was not yet 19 years old on the date the guardianship petition was filed, jurisdiction was not governed by the provisions of the Nebraska Uniform Adult Guardianship and Protective Proceedings Jurisdiction Act (UAGPPJA),[33] either. As such, under Nebraska's current statutory scheme, the goals the Legislature sought to advance by enacting the UCCJEA and the UAGPPJA[34] do not apply to 18-year-old prospective wards who are too old to be a "child" under the former and too young to be an "adult"[35] under the latter.

## 2. Jurisdiction Over Minor Guardianships

But our holding that the UCCJEA does not apply to this minor guardianship proceeding does not end our jurisdictional analysis. Marvin argues that even though the jurisdictional provisions of the UCCJEA do not apply here, other

---

[33] Neb. Rev. Stat. §§ 30-3901 to 30-3923 (Reissue 2016).

[34] See, e.g., *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006) (goal of UCCJEA is to promote uniformity and avoid jurisdictional conflict in child custody matters, ensure custody determinations are made in state best suited to decide child's best interests, discourage interstate custody controversies, avoid relitigating custody issues, and facilitate enforcement of custody orders).

[35] See § 30-3902(1) (defining "adult" as "an individual who has attained nineteen years of age").

Nebraska statutes give county courts subject matter jurisdiction over minor guardianship proceedings. He also argues that § 43-1238(b) of the UCCJEA should not be considered the only Nebraska statute to authorize county courts to make SIJ findings in minor guardianships.

[12] As courts of limited jurisdiction, county courts have only that jurisdiction which has been granted through specific legislative enactment.[36] Marvin contends that when a minor guardianship proceeding involves a potential ward who is 18 years old and thus is no longer considered a child under the UCCJEA, the county court's jurisdiction is governed exclusively by either Neb. Rev. Stat. § 24-517(2) (Cum. Supp. 2022), Neb. Rev. Stat. § 30-2211(a) (Reissue 2016), and/or Neb. Rev. Stat. § 30-2602(a) (Reissue 2016). Moreover, he urges this court to construe the language of § 30-2211 to impliedly give county courts authority to make SIJ findings in minor guardianships.

Section 24-517(2) is found within chapter 24 of the Nebraska Revised Statutes governing the courts generally. It states, in relevant part, that "[e]ach county court [has] [e]xclusive original jurisdiction in all matters relating to the guardianship of a person, except if a separate juvenile court already has jurisdiction over a child in need of a guardian, [then,] concurrent original jurisdiction with the separate juvenile court in such guardianship."[37] Section 30-2602(a) is found within the Nebraska Probate Code, and it provides: "The [county] court has jurisdiction over protective proceedings and guardianship proceedings." And § 30-2211(a), also within the probate code, provides, in relevant part, that "[t]o the full extent permitted by the Constitution of Nebraska, the [county] court has

---

[36] See *State v. A.D., supra* note 19. Accord *In re Estate of Evertson*, 295 Neb. 301, 311, 889 N.W.2d 73, 81 (2016) ("[c]ounty courts can acquire jurisdiction only through a specific legislative mandate as a result of a legislative enactment").

[37] § 24-517(2).

jurisdiction over all subject matter relating to . . . (2) protection of minors and incapacitated persons . . . .”

We have generally recognized that under § 24-517(2), “unless a juvenile court has acquired jurisdiction over a child in need of a guardian, a county court has exclusive jurisdiction over all matters relating to a guardianship.”[38] But our prior cases have not required that we harmonize, or prioritize, the various statutes governing a county court's jurisdiction over minor guardianships. This case does not require that we do so either.

Instead, we are satisfied that pursuant to either §§ 24-517(2), 30-2211(a), and/or 30-2602(a), the Hall County Court had jurisdiction over Marvin's petition for appointment of a minor guardian, and that therefore, we have jurisdiction to review the merits of the county court's guardianship ruling. But, as we address next, the county court's statutory authority to make SIJ findings outside the statutory framework of the UCCJEA is less clear.

### (a) Jurisdiction to Make SIJ Factual Findings in Minor Guardianship

Marvin contends that although § 43-1238(b) of the UCCJEA did not apply here, the UCCJEA should not be considered the “sole source”[39] of a county court's jurisdiction to make SIJ findings in minor guardianship proceedings. He suggests that under § 30-2211, the Legislature gave county courts “jurisdiction over all subject matter relating to . . . protection of minors,”[40] including “full power to make orders . . . and take *all other action necessary and proper to administer justice in the matters which come before it*.”[41] Marvin relies on the

---

[38] *In re Guardianship of Brydon P.*, 286 Neb. 661, 672, 838 N.W.2d 262, 271 (2013).

[39] Supplemental brief for appellant at 11.

[40] § 30-2211(a).

[41] § 30-2211(b) (emphasis supplied).

language italicized above to argue that where § 43-1238(b) of the UCCJEA does not apply to grant jurisdiction, we should hold that "§ 30-2211 gives a county court authority to make SIJ predicate findings in a guardianship proceeding."[42]

We decline to consider, in this case, whether any Nebraska statute other than § 43-1238(b) gives a county court jurisdiction to make SIJ factual findings when a minor guardian has been appointed. We instead leave that question for another day, because as we explain next, now that Tomas has reached the age of majority, addressing the question in this opinion would be merely advisory.[43]

### 3. Mootness

[13-18] Mootness does not prevent appellate jurisdiction; rather, mootness is a justiciability doctrine that can prevent courts from exercising jurisdiction.[44] A case is moot if the facts underlying the dispute have changed, such that the issues presented are no longer alive.[45] Stated differently, a case becomes moot when the issues initially presented in litigation cease to exist or the litigants lack a legally cognizable interest in the outcome of litigation.[46] The central question in a mootness analysis is whether changes in circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.[47] If a judgment rendered by the trial court will have no practical legal effect upon an existing controversy because an intervening event renders any grant of effectual relief impossible for the reviewing court, the

---

[42] Supplemental brief for appellant at 13.

[43] See *State v. Castillo-Rodriguez*, 313 Neb. 763, 778, 986 N.W.2d 78, 88 (2023) ("[i]t is generally not the function of appellate courts to render advisory opinions").

[44] *Johnson v. Vosberg*, 316 Neb. 658, 6 N.W.3d 216 (2024).

[45] *NP Dodge Mgmt. Co. v. Holcomb*, 314 Neb. 748, 993 N.W.2d 105 (2023).

[46] *In re Interest of Taylor W.*, 276 Neb. 679, 757 N.W.2d 1 (2008).

[47] *MIMG LXXIV Colonial v. Ellis, supra* note 9.

case is moot.[48] And as a general rule, a moot case is subject to summary dismissal.[49]

Because Tomas has reached the age of majority, the relief of appointing a minor guardian is no longer available under Nebraska law,[50] and Marvin does not contend otherwise. Indeed, at oral argument before this court, the only relief Marvin requested was to remand this matter to the county court with directions to make the requested SIJ factual findings. But Marvin has not explained how such findings could be made in the absence of an order appointing a minor guardian for Tomas.

Under federal immigration law, factual findings to support SIJ status must be made by a state court that has entered an order either declaring the immigrant to be dependent on the court or placing the immigrant in the custody of an agency or department of the state or an individual or entity appointed by the court.[51] In other words, a state court's order of dependency or custody is a fundamental feature of the federal SIJ framework.

Here, unlike our prior guardianship cases involving SIJ findings,[52] no minor guardian was appointed for Tomas, and thus no custody order exists to support related SIJ factual findings. Moreover, now that Tomas has reached the age of

---

[48] See *id.*

[49] *State ex rel. Peterson v. Ebke*, 303 Neb. 637, 930 N.W.2d 551 (2019).

[50] See Neb. Rev. Stat. § 30-2614 (Reissue 2016) (minor guardian's authority and responsibility terminates "upon the minor's death, adoption, marriage or attainment of majority").

[51] See 8 U.S.C. § 1101(a)(27)(J)(i). Accord 8 C.F.R. § 204.11(c)(1)(i)(B) (to be eligible for special immigrant juvenile status, petitioner must be subject of court order declaring petitioner dependent or placing petitioner "under the custody of an agency or department of a State, or an individual or entity appointed by a State or juvenile court").

[52] Cf., *In re Guardianship of Luis J., supra* note 31; *In re Guardianship of Carlos D., supra* note 27.

majority under Nebraska law,[53] no such custody order can ever be entered. Regardless of Marvin's arguments that the county court erred by denying his minor guardianship petition and by failing to make SIJ findings, Tomas is now an adult, and he cannot be the subject of a minor guardianship under Nebraska law. And without an order of custody appointing a minor guardian for Tomas, we are aware of no legal basis for making SIJ factual findings. Under the circumstances, this court cannot fashion meaningful relief on either of the issues Marvin raises on appeal, and the appeal is moot.

Nevertheless, Marvin asks us to reach the merits of the issues he raises on appeal under either of two recognized exceptions to the mootness doctrine: the public interest exception or the collateral consequences exception. We address each exception in turn and conclude that neither applies.

### (a) Public Interest Exception

We understand Marvin's argument regarding the public interest exception to be limited to his first assignment of error, which challenges the legal standard applied by the county court to deny the minor guardianship petition. We limit our analysis accordingly.

[19,20] The public interest exception to the mootness doctrine requires the consideration of (1) the public or private nature of the question presented, (2) the desirability of an authoritative adjudication for the guidance of public officials, and (3) the likelihood of recurrence of the same or a similar problem.[54] As these factors demonstrate, the public interest exception to the mootness doctrine exists so that authoritative judicial guidance can be provided on issues that are likely to recur but would otherwise inherently evade review.[55]

[21] Marvin suggests there is confusion regarding the proper legal standard to apply when deciding whether to appoint a

---

[53] See § 43-2101.

[54] *City of Hastings v. Sheets*, 317 Neb. 88, 8 N.W.3d 771 (2024).

[55] *MIMG LXXIV Colonial v. Ellis, supra* note 9.

minor guardian, and he argues the issue is "capable of repetition [so] this Court should give probate courts clear direction on [the] issue."[56] We question Marvin's assertion that there is confusion over the applicable legal standard for appointing minor guardians. Section 30-2611(b) of the probate code lists the specific criteria that must be met before a court can appoint a guardian for a minor, so the applicable legal standard is well established. But even if we could be persuaded that confusion over the applicable legal standard exists and is likely to recur, we cannot agree it will inherently evade judicial review, especially given the volume of guardianship appeals. Because it is generally inappropriate for an appellate court to review a moot case to address an issue that would not otherwise evade review,[57] we decline to apply the public interest exception to address Marvin's first assignment of error.

### (b) Collateral Consequences Exception

Marvin asks us to reach the merits of both assignments of error under the collateral consequences exception, asserting that the county court's "denial of Tomas' guardianship and the . . . failure to address his request for special findings has collateral consequences for Tomas even after turning 19 years of age."[58]

[22] In Nebraska, the collateral consequences exception to the mootness doctrine "'permits adjudication of the merits of a criminal case where the petitioner may suffer future state or federal penalties or disabilities as a result of the [criminal] judgment[,]' even though the criminal sentence has already been served."[59] Similarly, the Nebraska Court of Appeals has

---

[56] Brief for appellant at 26.

[57] See, *MIMG LXXIV Colonial v. Ellis, supra* note 9; *NP Dodge Mgmt. Co. v. Holcomb, supra* note 45.

[58] Brief for appellant at 24.

[59] *MIMG LXXIV Colonial v. Ellis, supra* note 9, 316 Neb. at 752, 6 N.W.3d at 804. Accord *NP Dodge Mgmt. Co. v. Holcomb, supra* note 45. See, also, *State v. Patterson*, 237 Neb. 198, 465 N.W.2d 743 (1991).

applied the collateral consequences exception in a juvenile delinquency case to allow an adjudicated youth to withdraw his admission to a charge of criminal mischief after his case was closed and he had been discharged from custody.[60]

But appellate courts in Nebraska have declined to apply the collateral consequences exception outside the criminal or juvenile delinquency context.[61] And because Marvin offers no principled reason to depart from that precedent, we decline his invitation to apply the collateral consequences exception in this minor guardianship proceeding.

## V. CONCLUSION

For the foregoing reasons, we hold that a county court's jurisdiction over a minor guardianship proceeding is not governed by the UCCJEA where the prospective ward has reached the age of 18 and is no longer a "child" as defined by the UCCJEA.[62] And although we conclude that other Nebraska statutes gave the county court jurisdiction over the minor guardianship proceeding at issue here, and that therefore, we have jurisdiction to review the merits of the county court's guardianship ruling, we decline to exercise that jurisdiction. Instead, we conclude that the issues raised on appeal became moot once Tomas reached the age of majority and that none of the exceptions to the mootness doctrine urged by Marvin apply. We therefore must dismiss the appeal as moot.

APPEAL DISMISSED.

---

[60] See *In re Interest of Justin V.*, 18 Neb. App. 960, 797 N.W.2d 755 (2011).

[61] See, e.g., *MIMG LXXIV Colonial v. Ellis, supra* note 9; *NP Dodge Mgmt. Co. v. Holcomb, supra* note 45; *In re Interest of Justin V., supra* note 60.

[62] See § 43-1227(4).