Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/25/2018 09:06 AM CDT

In re Guardianship of S.T., a minor child.
Gabe N. Stalder, appellant, v. Anne T.
and Andrew T., appellees.

___ N.W.2d ___

Filed May 25, 2018.    No. S-17-600.

1. **Child Custody: Jurisdiction: Appeal and Error.** The question whether jurisdiction should be exercised under the Uniform Child Custody Jurisdiction and Enforcement Act is entrusted to the discretion of the trial court and is reviewed by an appellate court de novo on the record for abuse of discretion.

2. ____: ____: ____. In considering whether jurisdiction exists under the Uniform Child Custody Jurisdiction and Enforcement Act, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.

3. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

5. **Child Custody: Jurisdiction.** Jurisdiction over a child custody proceeding is governed exclusively by the Uniform Child Custody Jurisdiction and Enforcement Act.

6. **Child Custody: Guardians and Conservators: Words and Phrases.** Under the Uniform Child Custody Jurisdiction and Enforcement Act, the term "child custody proceeding" is defined to include a proceeding for guardianship of a minor.

7. **Child Custody: Jurisdiction: States.** For a state to exercise jurisdiction over a child custody dispute, it must either be the "home state" as defined by the Uniform Child Custody Jurisdiction and Enforcement Act or fall under limited exceptions to the home state requirement specified by the act. Generally speaking, Neb. Rev. Stat. § 43-1238(a)(1)

(Reissue 2016) grants jurisdiction to the "home state" of the child and § 43-1238(a)(2) through (4) sets out the "exceptions" under which a court will have jurisdiction, even if it is not in the child's "home state."

8. **Jurisdiction: Appeal and Error.** When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

Appeal from the County Court for Richardson County: Curtis L. Maschman, Judge. Judgment vacated, and cause remanded with directions.

Melanie A. Kirk, of Johnson, Flodman, Guenzel & Widger, for appellant.

Andrew T., pro se.

No appearance for appellee Anne T.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ., and Steinke, District Judge.

Stacy, J.

Gabe N. Stalder petitioned the county court to be appointed guardian of his then 7-year-old niece, S.T., alleging her parents were not properly caring for her. After an evidentiary hearing, the court denied the petition, finding Stalder had failed to prove by clear and convincing evidence that S.T.'s parents were unfit. Stalder appealed. Because we find the county court lacked jurisdiction over the guardianship proceedings under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[1] we vacate the judgment and remand the matter with directions to dismiss.

## BACKGROUND

Andrew T. and Anne T. are the natural parents of S.T., born in November 2009 in Beatrice, Nebraska.

---

[1] Neb. Rev. Stat. §§ 43-1226 to 43-1266 (Reissue 2016).

Shortly after S.T.'s birth, Andrew and Anne moved with S.T. to a home in Humboldt, Nebraska. They lived together in Humboldt until February 27, 2017, when they moved to Emporia, Kansas.

A few days later, on March 1, 2017, Anne's brother, Stalder, filed a petition for temporary and permanent guardianship of S.T. in the county court for Richardson County, Nebraska. In his petition, Stalder claimed S.T.'s parents were unsuitable to care for her. He sought an ex parte order appointing him as S.T.'s temporary guardian and an expedited hearing on his request for appointment as S.T's permanent guardian. Based on the allegations in the petition, the court appointed Stalder as temporary limited guardian for S.T. and set the matter for an evidentiary hearing on April 12.

## EVIDENTIARY HEARING

At the evidentiary hearing, Stalder called three witnesses: Andrew, Anne, and himself. Andrew and Anne were self-represented and called no witnesses. Generally, Andrew and Anne testified that S.T. was healthy and cared for. Stalder presented evidence questioning the propriety of her education, the condition of the family home in Nebraska, and the effect of Andrew's antigovernment views on S.T.'s emotional and physical health.

The evidence was undisputed that on February 10, 2017, Andrew signed a 1-year lease on property in Emporia. And on February 27, Andrew, Anne, and S.T. moved to Emporia and were still living there at the time of the evidentiary hearing.

## ORDER DENYING GUARDIANSHIP

The county court entered an order denying Stalder's petition for permanent guardianship and terminating his temporary limited guardianship.

Before addressing the merits, the court acknowledged that jurisdiction over the guardianship proceeding was governed by the UCCJEA. It found the evidence was uncontroverted that S.T. resided with Andrew and Anne in Nebraska until

February 27, 2017, at which point they moved to Kansas. The court then concluded, without further analysis, that the UCCJEA "defines Nebraska as the 'home state' under the facts in this action."

Addressing the merits, the court noted that because Andrew and Anne objected to the guardianship of their child, the parental preference doctrine required Stalder to prove parental unfitness by clear and convincing evidence. The court explained that "[a]bsent such proof, the constitutional dimensions of the relationship between parent and child require a Court to deny a request for guardianship." The court found that Stalder had presented limited evidence regarding the health and well-being of S.T. and that most of the evidence focused on the "antigovernment" beliefs and actions of Andrew. After discussing the evidence, the court concluded Stalder had failed to meet his burden of showing parental unfitness. The court denied Stalder's petition for permanent guardianship and dissolved the temporary guardianship.

Stalder timely appealed, and Andrew cross-appealed. We moved the case to our docket on our own motion.[2]

ASSIGNMENTS OF ERROR

Stalder assigns, restated and consolidated, that the county court erred in finding he failed to meet his burden of proving that S.T.'s parents were unfit.

In Andrew's purported cross-appeal, he does not specifically assign error to any ruling made by the trial court.[3] Instead, he claims that Stalder's behavior in seeking the guardianship was generally unlawful.

STANDARD OF REVIEW

[1] The question whether jurisdiction should be exercised under the UCCJEA is entrusted to the discretion of the trial

---

[2] See Neb. Rev. Stat. § 24-1106(3) (Supp. 2017).

[3] See Neb. Rev. Stat. § 25-1919 (Reissue 2016) and Neb. Ct. R. App. P. § 2-109(D)(1)(e) (rev. 2014).

court and is reviewed by an appellate court de novo on the record for abuse of discretion.[4]

[2] In considering whether jurisdiction exists under the UCCJEA, a jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires an appellate court to reach a conclusion independent from the trial court.[5]

[3] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[6]

## ANALYSIS

[4] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7] Here, the threshold issue we must address is whether the county court had jurisdiction under the UCCJEA to hear and determine the guardianship petition.

### Jurisdiction and UCCEJA

[5,6] Jurisdiction over a child custody proceeding is governed exclusively by the UCCJEA.[8] Under the UCCJEA, the term "[c]hild custody proceeding" is defined to include a proceeding for guardianship of a minor.[9] The trial court correctly recognized the UCCJEA was applicable to the guardianship proceeding filed by Stalder, but on this record, we cannot agree with the trial court's finding that Nebraska was S.T.'s "home state" on the date the guardianship proceeding was commenced.

---

[4] *Watson v. Watson*, 272 Neb. 647, 724 N.W.2d 24 (2006).

[5] See *Carter v. Carter*, 276 Neb. 840, 758 N.W.2d 1 (2008). See, also, *In re Interest of Violet T.*, 286 Neb. 949, 840 N.W.2d 459 (2013).

[6] *In re Interest of Violet T., supra* note 5.

[7] *Karo v. Nau Country Ins. Co.*, 297 Neb. 798, 901 N.W.2d 689 (2017).

[8] *Carter v. Carter, supra* note 5.

[9] § 43-1227(4). Accord *In re Guardianship of David G.*, 18 Neb. App. 918, 798 N.W.2d 131 (2011).

Jurisdiction to make an initial child custody determination is governed by § 43-1238 of the UCCJEA, which provides in part:

(a) Except as otherwise provided in section 43-1241 [regarding temporary emergency jurisdiction], a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is a more appropriate forum under section 43-1244 or 43-1245, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (a)(2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 43-1244 or 43-1245; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state.

[7] For a state to exercise jurisdiction over a child custody dispute, it must either be the home state as defined by the UCCJEA or fall under limited exceptions to the home state requirement specified by the UCCJEA.[10] Generally speaking, § 43-1238(a)(1) grants jurisdiction to the home state of the child and § 43-1238(a)(2) through (4) sets out the exceptions under which a court will have jurisdiction, even if it is not in the child's home state.[11]

Here, because the county court found Nebraska was the home state under the UCCJEA, it did not address any of the exceptions under § 43-1238(a)(2) through (4). Moreover, the record developed by the parties lacks any evidence upon which we might conduct a de novo review of the applicability of any of the home state exceptions. We therefore necessarily limit our analysis to whether the county court correctly found Nebraska was the home state under § 43-1238(a)(1).

The UCCJEA defines "[h]ome state" as

> the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.[12]

As used in the UCCJEA, "[c]ommencement" of a proceeding means "the filing of the first pleading in a proceeding."[13] Thus, the operative date for the home state analysis in this case is March 1, 2017.

Pursuant to § 43-1238(a)(1), the county court would have jurisdiction under the UCCJEA if S.T.'s home state was

---

[10] See, *Carter v. Carter, supra* note 5; § 43-1238(a)(2) through (4).

[11] See *Carter v. Carter, supra* note 5.

[12] § 43-1227(7).

[13] § 43-1227(5).

Nebraska on March 1, 2017, or if S.T.'s home state was Nebraska within 6 months before March 1, 2017, *and* "the child is absent from [Nebraska] but a parent or person acting as a parent continues to live in [Nebraska]." Neither alternative is satisfied here.

It was undisputed that Andrew and Anne moved with S.T. to Kansas on February 27, 2017. So when the first pleading was filed on March 1, S.T. had not lived in Nebraska for the immediately preceding 6 consecutive months. Although § 43-1227 includes periods of "temporary absence" in the calculation of the 6-month period, there was no evidence the move to Kansas was temporary. Andrew signed 1-year lease, and the family was still living in Kansas at the time of the evidentiary hearing. On this record, Nebraska was not S.T.'s home state on March 1, 2017.

Moreover, although Nebraska may have been S.T.'s home state within 6 months before the guardianship was commenced, there was no evidence that either of S.T.'s parents continued to reside in Nebraska after the family moved to Kansas on February 27, 2017, and there was no evidence that a person "acting as a parent" continued to reside in Nebraska.[14]

Section 43-1227(13) defines a "[p]erson acting as a parent" as one who "has had physical custody for a period of six consecutive months . . . within one year immediately before the commencement" of the proceeding and "has been awarded legal custody by a court or claims a right to legal custody." Stalder, who continued to reside in Nebraska, could not be considered "acting as a parent" under § 43-1227(13), because he never had physical custody of S.T., nor was he ever awarded her legal custody. Stalder's temporary limited guardianship gave him limited authority only to access S.T.'s educational, medical, and other such records; make inquiries about S.T.'s residence and the conditions of that residence; and to see and speak with S.T. and her

---

[14] See § 43-1238(a)(1).

caregivers. It did not grant even limited rights of physical or legal custody.

On this record, Nebraska was not S.T.'s home state under either of the alternatives in § 43-1238(a)(1). We therefore must find the county court lacked jurisdiction under the UCCJEA over this guardianship proceeding.

[8] When a trial court lacks jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[15] As such, our disposition of this case does not permit us to reach the merits of the guardianship proceeding.

## CONCLUSION

We conclude the county court lacked jurisdiction over the guardianship proceedings under the UCCJEA, and we therefore lack jurisdiction over this appeal. We must vacate the judgment of the county court and remand the matter with directions to dismiss the guardianship proceeding.

JUDGMENT VACATED, AND CAUSE
REMANDED WITH DIRECTIONS.

WRIGHT, J., not participating.

---

[15] See *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).