**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Kelcey Kennedy, Richard Kennedy, and Tara Townley,
Defendants,

Of whom Kelcey Kennedy is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2024-001086

---

Appeal From Beaufort County
Douglas L. Novak, Family Court Judge

---

Unpublished Opinion No. 2025-UP-267
Heard June 10, 2025 – Filed July 24, 2025

---

**VACATED**

---

Marshall L. Horton, of Horton & Associates, LLC, of Bluffton, for Appellant.

William Evan Reynolds, of Kingstree, for Respondent.

Riley Augustus Bradham, of Bradham Law Firm, of Charleston, for the Guardian ad Litem.

---

**PER CURIAM:**  Kelcey Kennedy (Mother) appeals the family court's order of non-emergency removal finding she physically abused her minor child (Child);[1] granting custody of Child to Richard Kennedy (Father) and Tara Townley, Child's maternal grandmother (Grandmother); and entering Mother's name in the Central Registry of Child Abuse and Neglect (the Central Registry).  On appeal, Mother argues the family court (1) lacked subject matter jurisdiction over the South Carolina Department of Social Services' (DSS's) action and lacked personal jurisdiction over Child under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA),[2] (2) erred in finding retention of Child in the home would place her at an unreasonable risk of harm, and (3) erred in finding she physically abused Child and entering her name in the Central Registry.  We vacate the family court's order of non-emergency removal.

## FACTS AND PROCEDURAL HISTORY

On February 17, 2021, Child presented at the emergency room with seizures.  A CT scan taken at the emergency room revealed Child suffered intercranial hemorrhages; thereafter, Child was transferred to the Medical University of South Carolina (MUSC).  Further testing revealed blood in Child's brain tissue and intracranial space, and a physician diagnosed Child with seizures and respiratory failure.  On February 17, 2021, DSS received a report alleging physical abuse of Child, and on February 25, 2021, Parents agreed to a caregiver safety plan that placed Child with Grandmother.  On or about March 12, 2021, Mother was charged with child abuse in connection with the February 17 incident involving Child.  DSS indicated a case on March 31, 2021, for physical abuse and substantial risk of physical abuse against Mother.  DSS filed its complaint for non-emergency removal on October 13, 2021.  In her answer, Mother argued the family court did not have jurisdiction over Child because DSS filed its action more than six months after Child left South Carolina and established residence in Massachusetts.

On September 16, 2022, Mother and Father (collectively, Parents) filed a motion to dismiss based on improper venue and lack of jurisdiction, arguing Child had resided in Massachusetts for more than six months prior to DSS filing its

---

[1] Child was born in January 2021.
[2] S.C. Code Ann. §§ 63-15-300 to -394 (2010 & Supp. 2024).

complaint. At the May 9, 2023 motion hearing, Grandmother testified she and Child left South Carolina on April 12, 2021, and arrived in Massachusetts, where Grandmother lived, on April 13, 2021, at 4:30 p.m. She indicated Child had not returned to South Carolina. Grandmother confirmed she notified DSS that she and Child were leaving the state. She testified that neither Mother nor Father resided in South Carolina—Father moved to Missouri in December 2022 and Mother moved away from South Carolina in July 2022. Father, who was a military drill instructor, testified he and Mother moved to South Carolina in January 2021 under military order and purchased a house. Father confirmed he resided in South Carolina until December 2022. Mother testified she did not intend to return Child to South Carolina.

Mother argued that under section 63-15-330, the family court lacked subject matter jurisdiction because South Carolina was not Child's home state within the six months immediately preceding DSS's filing of its removal action and lacked personal jurisdiction due to Parents' and Child's absences from and lack of connection with the state. Mother further argued Massachusetts had jurisdiction and had not declined jurisdiction, South Carolina was an inconvenient forum under section 63-15-342, and DSS's delay in filing its action was an unjustified action under section 63-15-344.

DSS argued it would be inequitable for the family court to dismiss the action because Child was born and abused in South Carolina and the doctors needed to testify were in South Carolina. DSS explained it did not file an emergency removal action because it had "trusted" Grandmother but it was later "deceived." It contended the family court retained subject matter jurisdiction because Parents did not appeal the court's two previous continuance orders that determined it had subject matter jurisdiction over the action. DSS further argued that under section 63-15-330(A)(1), the family court had jurisdiction over its removal action because it filed the action three and a half hours before Massachusetts became Child's home state.

In its July 27, 2023 temporary order, the family court denied Parents' motion to dismiss for lack of jurisdiction. The family court applied an hour-for-hour accounting to determine South Carolina was Child's home state within six months of the commencement of DSS's non-emergency action. Specifically, the family court found Grandmother and Child arrived in Massachusetts at approximately 4:30 p.m. on April 13, 2021, and DSS filed its action at 12:23 p.m. on October 13, 2021. The family court determined the six-month threshold to establish Massachusetts as Child's home state "[fell] short by a few hours." Further, it noted,

"[T]he suggestion that the jurisdiction to investigate and prosecute such a serious matter could be vacated with a cold calculation of actual days and/or hours insults the basic [tenet] and the importance of jurisdiction itself, and the State's sacrosanct and vested interest in protecting and preserving the best interests of minor children."  The family court also found Grandmother, who was charged with Child's physical custodial care and protection, left South Carolina while DSS's investigation was ongoing; South Carolina would not be an inconvenient forum under section 63-15-342; and if it were to adopt Parents' argument, it would encourage parties to "flee" South Carolina in an attempt to establish jurisdiction in another state.  The family court also noted no other state had issued an order regarding Child or asserted jurisdiction and Parents did not object to previous orders establishing the family court's jurisdiction.

On August 11, 2023, Mother filed a notice of appeal with this court, challenging the family court's temporary order.  This court sent a letter pursuant to *Neville v. Neville*[3] to Mother on August 15, 2023, advising it would hold the appeal in abeyance until the family court issued a final order and requesting that she advise this court of the status of the case every sixty days.  This court dismissed Mother's appeal for failure to provide a status update and sent the remittitur on December 11, 2023.

At the November 29 and 30, 2023 merits hearing, Mother renewed her jurisdictional motion, which the family court denied.  Dr. John Melville, Chief of the Division of Child Abuse Pediatrics at MUSC, opined to a reasonable degree of medical certainty that Child was an abused or neglected Child and violent shaking caused Child's injuries.  Dr. Melville testified that in addition to intercranial hemorrhages, Child suffered a cortical laceration, restrictive diffusion, and an aneurysm.  He opined these physical findings were "strongly concerning for abusive head trauma."  Dr. Melville explained that a cortical laceration was a "brain tissue tear" and this injury increased his confidence in his diagnosis of child abuse or neglect.  He confirmed Child's cortical laceration was not caused by a naturally occurring condition and there was no described accident that could have caused it.  Dr. Melville indicated other causes of cortical lacerations included significant automobile accidents, especially if the child is ejected from the car; falls from more than a story or two; and crush injuries, such as when a large television falls on a child's head.  During her testimony, Mother denied physically harming Child.

---

[3] 278 S.C. 411, 297 S.E.2d 423 (1982).

A DSS caseworker testified that at the time of the merits hearing, Mother was living with Grandmother and Child in Massachusetts and to her knowledge, Mother had been living with them for more than a year. The caseworker indicated she had contacted Child through FaceTime but had been unable to conduct a home visit to confirm in person whether Mother was complying with the supervised visitation requirement under Mother's bond order. She explained the DSS safety plan expired after ninety days and a new safety plan had not been implemented because Child was residing in Massachusetts. When asked whether there was any reason DSS could not protect Child if Mother regained custody, the caseworker responded, "Well, currently she's not residing in South Carolina. It's not something that we can sufficiently manage or oversee to ensure protection, safety, and well-being of a child outside our state." She stated DSS was asking the family court to relieve it from providing services to Child's family because Mother had not admitted fault and Child and Parents "live out of state at this point and we can't case manage effectively to ensure the services are completed from this position."

Following the merits hearing, the family court issued an order of non-emergency removal on January 16, 2024. The family court found Mother physically abused Child, entered her name in the Central Registry, and granted Father and Grandmother custody of Child. The family court determined retention in or returning Child to the home would place Child at an unreasonable risk of harm affecting her life, physical health or safety, and/or mental well-being. It noted Mother was currently living in the home with Grandmother and Child. The family court granted Mother supervised visitation and ordered her to complete a parental fitness evaluation. It further ordered DSS to provide the Massachusetts Department of Children and Families with an update on Child's case, including a copy of the non-emergency removal order, prior to closing the file. The family court ordered a permanency planning hearing be held within thirty days of the order. This appeal followed.

**STANDARD OF REVIEW**

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 651-52 (2011). "The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported

by the preponderance of the evidence." *Brantley v. Brantley*, 441 S.C. 284, 294, 893 S.E.2d 349, 354 (Ct. App. 2023) (quoting *Clark v. Clark*, 423 S.C. 596, 603, 815 S.E.2d 772, 776 (Ct. App. 2018)). "'Preponderance of evidence' means evidence which, when fairly considered, is more convincing as to its truth than the evidence in opposition." S.C. Code Ann. § 63-7-20(22) (Supp. 2024).

## LAW AND ANALYSIS

Mother argues the family court lacked jurisdiction over DSS's non-emergency action because Child's home state was Massachusetts when DSS filed its action. She asserts that under section 63-15-330(A)(1), the family court erred in applying an "hour-for-hour" accounting of time and contends the family court should have used a day-for-day accounting, which would have divested the court of jurisdiction. She further contends the family court did not have emergency jurisdiction under the UCCJEA because DSS never asserted emergency jurisdiction and filed its action as a non-emergency removal. We agree.

"Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *S.C. Dep't of Soc. Servs. v. Tran*, 418 S.C. 308, 314, 792 S.E.2d 254, 257 (Ct. App. 2016) (quoting *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237-38, 442 S.E.2d 598, 600 (1994)). "[T]he UCCJEA govern[s] subject matter jurisdiction in interstate custody disputes." *Id.* at 315, 792 S.E.2d at 257 (quoting *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012)).

As used in the UCCJEA,

> "Child custody determination" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

> []"Child custody proceeding" means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue. The term includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of

parental rights, and protection from domestic violence, in which the issue may appear.

§ 63-15-302(3) to (4).

> Except as otherwise provided in [s]ection 63-15-336, a court of this State has jurisdiction to make an initial child custody determination only if:
>
> (1) this State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State, but a parent or person acting as a parent continues to live in this State;
>
> (2) a court of another state does not have jurisdiction under item (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under [s]ection 63-15-342 or 63-15-344, and:
>
>> (a) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and
>>
>> (b) substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;
>
> (3) all courts, having jurisdiction under item (1) or (2), have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child under [s]ection 63-15-342 or 63-15-344; or
>
> (4) no court of any other state would have jurisdiction under the criteria specified in item (1), (2), or (3).

§ 63-15-330(A).

> "Home state" means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

§ 63-15-302(7).

We hold the family court did not have subject matter jurisdiction under the UCCJEA over DSS's non-emergency removal action; therefore, we vacate the family court's order of non-emergency removal. *See Tran*, 418 S.C. at 314, 792 S.E.2d at 257 ("Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court." (quoting *Badeaux v. Davis*, 337 S.C. 195, 205, 522 S.E.2d 835, 840 (Ct. App. 1999))); *id.* at 314-15, 792 S.E.2d at 257 ("[I]t is the duty of this court to take notice and determine if the [f]amily [c]ourt had proper jurisdiction for its actions." (alterations in original) (quoting *Badeaux*, 337 S.C. at 205, 522 S.E.2d at 840)).

Initially, we find the family court erred by using an hour-for-hour accounting to determine South Carolina was Child's home state and therefore reason it had jurisdiction over DSS's removal action. In *Town of Summerville v. City of North Charleston*, our supreme court reaffirmed that when "a time requirement does not speak in terms of specific hour periods, the [c]ourt will not interpret a day to mean anything other than a calendar day." 378 S.C. 107, 112, 662 S.E.2d 40, 42 (2008). Accordingly, the six-month period under the definition of home state should be calculated on a day-for-day basis. *See* § 63-15-302(7) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding."); *Town of Summerville*, 378 S.C. at 112, 662 S.E.2d at 42-43 ("[When] a time prescription mentions only the passage of a number of days, a 'day' means a calendar day, beginning and ending at midnight.").

We have been unable to identify any South Carolina case law addressing the six-month calculation in the "home state" definition under the UCCJEA; however, other jurisdictions have addressed this question.[4] *See* § 63-15-330(A)(1) ("[A] court of this State has jurisdiction to make an initial child custody determination only if . . . this State is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding, and the child is absent from this State, but a parent or person acting as a parent continues to live in this State; . . . ."); § 63-15-302(7) ("'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period."). The Appellate Court of Illinois, Second District, found that under the UCCJEA's definition of "home state," the six consecutive months immediately before the commencement of a child custody proceeding included the date of filing. *In re Marriage of Diaz*, 845 N.E.2d 935, 941 (Ill. 2006). The Supreme Court of Nebraska found the operative date in determining home state jurisdiction under the UCCJEA was the underlying action's filing date. *In re Guardianship of S.T.*, 912 N.W.2d 262, 267 (Neb. 2018). Adopting the calculation methodologies of the Supreme Court of Nebraska and the Appellate Court of Illinois, Second District, we find the family court erred in finding South Carolina was Child's home state at the time DSS filed its non-emergency removal action. *See* S.C. Code Ann. § 63-15-390 ("In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."). Including the date of filing in the six-month calculation under the home state definition, the six-month period immediately before the commencement of the action ran from April 13, 2021, to October 13, 2021. Grandmother testified at the May 9, 2023 motion hearing that she and Child left South Carolina on April 12, 2021. DSS filed its non-emergency removal action on October 13, 2021. Accordingly, we find South Carolina was not Child's home state on the date DSS

---

[4] The UCCJEA has been adopted by forty-nine states as well as the District of Columbia, Guam, and the United States Virgin Islands. The State of Massachusetts has not adopted the UCCJEA. *See Getting Your Custody Order Recognized & Enforced in the U.S.*, U.S. DEP'T OF STATE — BUREAU OF CONSULAR AFFAIRS, https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/legain-info-for-parents/getting-custody-order-enforced-in-US.html#ExternalPopup (last updated Jun. 3, 2024).

filed its action because Child had lived with Grandmother, who was acting as a parent, in Massachusetts for the consecutive six-month period immediately before DSS commenced its action.

Similarly, we find South Carolina was not Child's home state within six months before the commencement of the proceeding. *See* § 63-15-330(A)(1) ("[A] court of this State has jurisdiction to make an initial child custody determination only if . . . this State . . . was the home state of the child within six months before the commencement of the proceeding and the child is absent from this State, but a parent or person acting as a parent continues to live in this State."); § 63-15-302(7) ("In the case of a child less than six months of age, the term means the state in which the child lived from birth with [a parent or a person acting as a parent]."). Although South Carolina was Child's home state from birth and Parents resided in South Carolina on the date DSS filed its removal action, Child left South Carolina on April 12, 2021, and her absence from the state on that date was not a temporary absence.

Further, we find South Carolina did not have subject matter jurisdiction to make an initial child custody determination under 63-15-330(A)(2), (3), or (4). Subsection (A)(2) provides South Carolina has jurisdiction if "a court of another *state* does not have jurisdiction under item (1)" and under subsection (A)(4), if "no court of any other *state* would have jurisdiction under the criteria specified in item (1), (2), or (3)." As used in the UCCJEA, "'State' means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States." S.C. Code Ann. § 63-15-302(15). Accordingly, the plain terms of section 63-15-330(A)(1) reveal Massachusetts to be a "court of another state" having jurisdiction in this matter. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."); *id.* ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."). As discussed above, the six-month period immediately before the commencement of the action ran from April 13, 2021, to October 13, 2021. Grandmother testified at the May 9, 2023 motion hearing that she and Child arrived in Massachusetts on April 13, 2021; therefore, Massachusetts was Child's home state on October 13, 2021. Further, the record contains no evidence that Massachusetts acted to decline jurisdiction with respect to Child. *See* § 63-15-330(A)(2) to (3) (providing South Carolina has jurisdiction to make an initial child custody determination under certain conditions when a court of the home state of the child or all courts having

jurisdiction under subsections (A)(1) and (2) have declined to exercise jurisdiction on the ground that South Carolina is the more appropriate forum under section 63-15-342 or 63-15-344).

Finally, we find South Carolina did not have temporary emergency jurisdiction over DSS's removal action. DSS filed a *non-emergency* removal action approximately eight months after it received the report of alleged physical abuse and six months after Child left South Carolina. *See* § 63-15-336(A) ("A court of this State has temporary emergency jurisdiction if the child is present in this State and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."). Based on the foregoing, we vacate the family court's order of non-emergency removal for lack of subject matter jurisdiction.

Although we vacate the family court's order of non-emergency removal for lack of subject matter jurisdiction, we take this opportunity to commend the family court for its thorough and compassionate consideration of the merits of DSS's removal action. We are dismayed that a child so abused, as proven by a preponderance of the evidence at trial, could have been so failed by DSS. DSS's apparent lack of attention and diligence in failing to file an *emergency* action and waiting approximately eight months after receiving the report of alleged physical abuse and six months after Child left South Carolina to live with Grandmother in Massachusetts[5]—which Grandmother timely informed DSS of— to seek non-emergency removal placed a difficult decision before the family court. Clearly, the family court's primary concern was for the safety and welfare of Child.

**CONCLUSION**

Because the family court lacked subject matter jurisdiction to hear DSS's non-emergency removal action, the family court's order of non-emergency removal is hereby vacated. DSS shall send a copy of its file concerning Child and the transcript of the November 29 and 30, 2023 merits hearing to the Massachusetts Department of Children and Families within fifteen days of the filing of this opinion.[6]

---

[5] Grandmother returned to the residence noted in the safety plan.
[6] Appellant's counsel confirmed at oral argument that there is an open case in Massachusetts.

**VACATED.**

**KONDUROS, MCDONALD, and VINSON, JJ., concur.**